THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WAYNE CURRY; Defendant-Appellant.

Second District   Nos. 2—86—0315, 2—86—0383 cons.

Opinion filed February 19, 1988.—Rehearing denied April 12, 1988.

G. Joseph Weller, Kerry Evan Saltzman, and Paul J. Glaser, all of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Wayne Curry, was charged with aggravated battery. After a jury trial, at which he was represented by appointed counsel, defendant was found not guilty of aggravated battery but guilty of the lesser included offense of battery. On April 9, 1986, defendant was sentenced to one year of probation and 60 days in the Lake County jail and was ordered to undergo drug and alcohol evaluation and to pay costs and restitution. Defendant filed a notice of appeal the same day.

After sentencing, defendant retained private counsel to present a motion for a new trial. Defendant alleged in his motion that he was denied a fair trial because his appointed counsel had provided ineffective assistance and because the prosecutor had failed to tender exculpatory evidence during the course of discovery. Defendant's motion was denied, and a second notice of appeal was filed May 2, 1986. The appeals have been consolidated for review pursuant to defendant's motion. For the reasons set forth below, we reverse the conviction and remand this cause for a new trial.

On September 30, 1985, the date of the alleged battery, defendant was living with his wife, Patricia, and their six-month-old son, Wayne, Jr., in a house at 115 Baldwin in Waukegan. Other residents of the house on that date included the owner, Patricia's grandmother, as well as Patricia's mother, Beverly Quigley, Patricia's brother, and the victim, James Quigley, who is Beverly Quigley's boyfriend.

Beverly Quigley testified that at approximately 6:30 p.m. on the date in question, defendant and Patricia left the house to look for an apartment, leaving Wayne, Jr., in Beverly's care. James Quigley arrived home from work around 7:30 p.m. A little before 8 p.m., Beverly and her mother left the house for a short time, leaving James to watch Wayne, Jr. Beverly testified that when she left, the baby was dressed in his night clothes, and that he was starting to "get a little fussy" because he had not had supper. She also testified that when she left the house, there were no marks, cuts, or bruises on the baby.

When she arrived home about 20 minutes later, Beverly saw James sitting in the front yard with a red, swollen eye and blood on his face. Defendant was standing in front of him yelling. Defendant told Beverly that he had caught James hitting Wayne, Jr., but Beverly did not notice anything unusual about the baby. Defendant and Patricia left, again leaving the baby with Beverly. Beverly fed the baby, and then took James to a hospital where he remained for six days.

James Quigley testified that when Beverly left the house, he was lying on the bed in his bedroom watching television. Wayne, Jr., who was lying next to him, began to cry so James tried to give the baby a toy. The baby did not want the toy, however, so James took the toy and laid it on the opposite side of the baby. He was about to pick the baby up and turn him over when the defendant came in without warning and hit James in the face. James fell to the floor, and defendant hit James in the face again, shattering his glasses. Defendant then picked James up and pushed him outside and to the ground. Defendant stood there yelling at James for 5 to 10 minutes until Beverly returned home. After defendant left, Beverly took James to a hospital where surgery was performed. Medical testimony revealed that James suffered a broken nose, as well as a cheekbone that was fractured in two places. James was off work for two weeks due to his injuries.

Defendant testified in his own defense. He testified that when he came home that evening he saw James lying on the bed. He saw James' left arm move out and then the hand come back up with a clenched fist, and heard James say, "You goddamn kid." After the first movement, defendant heard Wayne, Jr., start to cry. Defendant ran to James and grabbed him by the shirt and asked him "[W]hat the hell he thought he was doing" and if James had hit Wayne, Jr. James replied no, and defendant hit him once in the face. Defendant then brought James outside to get him away from the baby and yelled at him until Beverly returned. As set forth above, despite his claims that he was defending his son, defendant was convicted of battery.

Defendant argues on appeal that he was deprived of a fair trial by both the State's failure to disclose certain evidence during discovery and his trial counsel's ineffective assistance. The State contends, though, that this court should not reach the merits of defendant's arguments because the matters on which defendant bases his arguments are not properly before this court. The State claims that defendant's arguments on appeal are based on matters put of record by defendant's retained counsel, Jed Stone, attendant to the filing and litigation of the motion for a new trial, and that the trial court did not have jurisdiction when Stone entered the case and took the actions on which defendant's claims are based.

Defendant was sentenced on April 9, 1986, and a notice of appeal was filed on his behalf on the same date. At that time he was represented by appointed counsel. He then retained Stone, however, and on April 23, 1986, Stone appeared seeking leave to file the motion for a new trial and asking that bond be set pending the outcome of the motion. Stone specifically stated that defendant did not wish to appeal at that time. The trial court refused to set bond then but continued the matter to April 25, 1986. On that date, one of Stone's associates appeared and filed the motion for a new trial, accompanied by reports of interviews with certain individuals and a medical report pertaining to Wayne, Jr. The question of bond was continued to April 30, 1986, and a hearing on the motion for new trial was set for May 2, 1986.

On April 30, Stone again appeared and addressed the matter of the trial court's jurisdiction. He argued that under Supreme Court Rule 309 (107 Ill. 2d R. 309), defendant was entitled to withdraw his April 9 notice of appeal and that he had done so when he filed his motion for a new trial. Bond was again denied, and on May 2, 1986, defendant's motion for a new trial was denied. This time, though, bond was set pending appeal. It was at the May 2 hearing that the police and medical reports which had not been tendered to defendant by the State were put of record. The evidence of trial counsel's alleged incompetence was also introduced then.

■ As the State correctly notes, "[t]he general rule is that the filing of a notice of appeal divests the trial court of jurisdiction to enter any order involving a matter of substance and causes the jurisdiction of the appellate court to attach instanter." (*People v. Elsholtz* (1985), 136 Ill. App. 3d 209, 210.) Here, our jurisdiction attached on April 9, 1986, the day that defendant's first notice of appeal was filed. The State argues that since the proceedings after April 9, 1986, were clearly matters of substance, under the general rule, the trial court had no jurisdiction, and the records of the later proceedings are

therefore not properly part of the record on appeal here. Thus, the State concludes, since defendant bases his appellate claims on matters which became of record after this court's jurisdiction had vested, we should not reach the merits of defendant's claims.

Defendant responds that the trial court retained jurisdiction under Rule 309, as made applicable to criminal cases by Supreme Court Rule 612(a) (107 Ill. 2d R. 612(a)). Rule 309 provides as follows:

> "Before the record on appeal is filed in the reviewing court, the trial court may dismiss the appeal of any party (1) on motion of that party or (2) on stipulation of the parties. A copy of the order of dismissal filed in the trial court shall be forwarded by the clerk to the reviewing court within 5 days after the entry of such order." (107 Ill. 2d R. 309.)

The State agrees that the trial court would have retained jurisdiction if defendant had made a proper motion under Rule 309 but argues that defendant made no such motion.

While it is generally true that procedural rules are binding on criminal defendants (*People v. Scruggs* (1987), 161 Ill. App. 3d 468, 471), the parties have cited no case specifically addressing the issue of what procedure to follow under Rule 309 to revest the trial court with jurisdiction once a notice of appeal has been filed. Looking to the record, there is support for the State's argument that the trial court did not have jurisdiction. Defendant never did make a written motion to dismiss his first appeal, and there was no ruling by the trial court explicitly dismissing the appeal. Furthermore, no order of dismissal was ever filed in this court.

On the other hand, it does appear that all parties and the trial court proceeded as if a Rule 309 motion had been made and granted. It is undisputed that neither the record on appeal nor a certificate in lieu thereof had yet been filed in this court when the trial court heard defendant's motion for a new trial. Moreover, Stone specifically addressed the applicability of Rule 309 at the April 30, 1986, hearing in response to the State's question of whether defendant was withdrawing his notice of appeal. Stone indicated that defendant had made such a motion when he filed the motion for a new trial. The State agreed that by doing so, the trial court retained jurisdiction.

Under these circumstances, we believe that the trial court did retain jurisdiction to rule on defendant's motion for a new trial. Rule 309 does not specify the form of a motion to dismiss an appeal, nor does it require such a motion to be in writing. Thus, Stone's argument to the trial court regarding the applicability of Rule 309 would seem to be the equivalent to an oral motion to dismiss the appeal. The

State conceded that defendant had a right to do so, and the subsequent proceedings would indicate that the trial court treated the motion as granted. Although no order of dismissal was transmitted to this court as required by the rule, it is the clerk's responsibility to do so, not the defendant's. Since transmitting the order to this court is a purely administrative function and not an admonition to the parties, the order dismissing the appeal is the event that revests jurisdiction on the trial court rather than the filing of the order with this court.

█ Since the lack of a written motion here neither misled nor prejudiced the State, we prefer to dispose of the cause on the merits instead of finding that defendant has not preserved his arguments for the record due to imperfections in the procedure of withdrawing the April 9 notice of appeal. To do otherwise would needlessly elevate form over substance. We therefore dismiss defendant's first appeal, No. 2—86—0315, since the trial court implicitly did so in proceeding on the motion for a new trial. We turn now to defendant's substantive arguments.

Defendant first argues that he was denied a fair trial because the State failed to disclose exculpatory police and medical records which supported his theory of innocence. During the proceedings on the motion for a new trial, it became apparent that the State had not disclosed a police report made the day after the incident which indicated that the complainant, James Quigley, was the subject of a police investigation for his part in the incident. The report contained defendant's version of the incident, which essentially comports with his testimony at trial. The report also indicated that an assistant State's Attorney had authorized a charge of aggravated battery against Quigley for striking Wayne, Jr., although a later notation indicated that no complaint would be filed against Quigley due to defendant's poor credibility as a complaining witness.

A further notation indicated that the reporting officer had spoken with Dr. Smith of the Victory Immediate Care Center in Waukegan, who had treated Wayne, Jr., on the day after the incident in question. The notation states that Dr. Smith had observed a bruise on the baby's head, but that he could not identify what caused it. A copy of the medical report from the Immediate Care Center was also attached. The medical report itself contained a diagnosis of a soft tissue injury consisting of a small red mark or a small contusion on the baby's forehead. The medical report also included defendant's statement as to how the injury occurred. These reports, defendant argues, would have corroborated his version of the incident, while at the same time impeaching Quigley's credibility.

The State conceded below that its failure to disclose the reports to defendant was in violation of the holding of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and the requirements of Supreme Court Rule 412(c) (107 Ill. 2d R. 412(c)). The State does not now argue to the contrary. Instead, the State argues that even if it had disclosed the reports in question to the defendant, the result of the trial would not have been different.

■■ ■ The standard of review on these matters was set forth in *United States v. Bagley* (1985), 473 U.S. 667, 87 L. Ed. 2d 481, 105 S. Ct. 3375. Under *Bagley*, suppression of exculpatory evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial, and a conviction must be reversed "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." (*Bagley*, 473 U.S. at 678, 87 L. Ed. 2d at 491, 105 S. Ct. at 3381.) The State's failure to disclose the reports here undermines confidence in the outcome of the trial in at least two respects.

First, the medical report indicates that the baby's head was bruised on October 1, 1985, one day after the incident in question. This contrasts with Beverly Quigley's testimony that when she left the baby with James Quigley, there were no such marks. Although the report indicates that the injury was not serious, it does corroborate defendant's account that Quigley was hitting Wayne, Jr. While Dr. Smith may not have been able to identify the cause of the bruise, the fact that there was a bruise shortly after the incident, but not before, does support defendant's claim. Furthermore, while the reports themselves may have contained inadmissible hearsay, defendant could have at least called medical personnel to testify to the baby's injury.

Second, defendant's version of the incident, as set forth in the earlier undisclosed police report, is virtually identical to his trial testimony. Specifically, the report states that defendant heard Quigley say "You goddamn kid" as he brought his arm up. At trial, a later police report containing the defendant's version of the incident, made October 7, 1985, was introduced. That statement did not include reference to swearing on Quigley's part. In closing argument, the prosecutor hit upon the lack of mention of swearing in the later police report and implied that defendant had fabricated that testimony for trial. In a case such as this, where the outcome hinges on whether the jury believes the complainant's version of the incident or the defendant's, the undermining of defendant's credibility may have played a crucial role in the finding of guilty.

The State, however, points to other evidence in support of its ar-

gument that the result of the trial would have been the same even if defendant had had the undisclosed reports. Most worthy of mention is defendant's testimony that he grabbed Quigley by the shirt and asked him what in the hell he thought he was doing before hitting him. From this statement, the State concludes that defendant had subdued Quigley before hitting him so that Wayne, Jr., was no longer in danger. It appears, however, that from the time defendant observed Quigley's arm moving out and heard the baby cry to the time that Quigley was struck was but a matter of seconds. Wayne, Jr., was still lying only inches from Quigley. It should also be noted that Quigley testified that defendant said nothing before any blows were struck, thus indicating the short time span involved. Also, despite the State's contentions, the medical evidence as to the number of blows was inconclusive. While one doctor testified that it was more likely that multiple blows were struck, the other doctor testified that Quigley's injuries were consistent with a single blow to the cheekbone.

We conclude that the failure of the State to disclose the police and medical reports seriously undermines our confidence in the result below. The report of the baby's bruise corroborates defendant's claim that he was defending his infant son. Moreover, the nondisclosure of the police report containing reference to Quigley swearing at the baby set the stage for the prosecutor to suggest recent fabrication in his closing argument. This may well have affected the credibility of the testimony of defendant in the eyes of the jury under the facts of this case. Defendant's conviction must therefore be reversed.

In light of our decision above, we need not address defendant's argument that he was deprived of effective assistance of counsel when his trial counsel failed to take appropriate steps to discover the medical report from the Immediate Care Center. Appeal No. 2—86—0315 is hereby dismissed, and defendant's conviction for battery is reversed and the cause remanded for a new trial.

No. 2—86—0315, Dismissed.

No. 2—86—0383, Reversed and remanded.

NASH and REINHARD, JJ., concur.