THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN DOE, a/k/a Ronald Richardson, Defendant-Appellant.

First District (5th Division)   No. 85—3694

Opinion filed August 26, 1988.—Rehearing denied November 4, 1988.

372

Steven Clark and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Michael D. Boyce, Assistant State's Attorneys, of counsel), for the People. ·

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant Ronald Richardson was convicted under the Criminal Code of 1961 of home invasion (Ill. Rev. Stat. 1985, ch. 38, par. 12—11(a)(2)) and aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(1)). He received concurrent sentences of 30 years' imprisonment for home invasion and five years' imprisonment for aggravated battery, and on appeal, he raises the following four issues: (1) whether the trial court erred when it instructed the jury on the definition of a dangerous weapon; (2) whether he was denied a fair trial by the State's alleged improper comments during closing argument; (3) whether the aggravated battery conviction should be vacated because it was carved from the same physical act as the home invasion conviction; and (4) whether the trial court erred in sentencing him without a presentence report. We affirm.

Defendant was indicted for armed robbery, home invasion, armed violence, unlawful restraint, and two counts of aggravated battery. The State prosecuted him for one count each of armed robbery, home invasion and aggravated battery.

At trial, the complaining witness, James Franklin, testified that on May 26, 1985, at approximately 2 a.m., Diane Pullin, an acquaintance, arrived at his apartment. She brought a man with her whom Franklin did not know, and at trial, Franklin identified him as defendant. While they were in the hallway of the apartment building Franklin lived in, defendant placed a gun at Franklin's head, forced him back into his apartment, and hit him in the head with the gun. Another man entered the apartment and both he and defendant asked

Franklin, "[W]here's the money?" Defendant hit Franklin four or five more times with his fists and Franklin told him he only had two jars of pennies. Defendant blindfolded and tied Franklin up. Defendant and the other man ransacked the apartment, took Franklin's keys, and locked him in his apartment. When the men left, Franklin freed himself and called the police.

Franklin testified the men took two jars of pennies, several pairs of shoes, two television sets, his deceased wife's identification, his wallet with identification and credit cards, bank checks, and a portable sewing machine. Franklin's injuries included a swollen lip, a lump on the head, and a bloody nose.

Officer John Ciszewski testified that in the late evening of May 27, 1985, nearly two days after the robbery, he stopped defendant for traffic violations and when he was asked for identification, defendant produced credit cards and a United States Post Office identification card under the name James W. Franklin. On his mobile computer, Ciszewski checked Franklin's name with defendant's birth date, height, and weight but there was no driver's license issued under Franklin's name with that information. Defendant was then arrested.

Franklin identified defendant in a lineup as the man who robbed and beat him. While in custody, police discovered defendant had Franklin's and his deceased wife's identification in his possession. Certain pieces of Franklin's identification were altered with defendant's picture and birth date.

Defendant testified he lived with Pullin, who was his fiancee, and Phyllis Banks. He explained that he had Franklin's identification because he was involved in a check-cashing scheme with Franklin, Pullin, and Banks. Defendant testified that Franklin gave Pullin and Banks blank checks with his signature and his identification to enable Pullin to cash the checks. Pullin gave defendant the identification that he altered so he could cash the checks in Indiana. Defendant explained that he would purchase expensive items, such as video cassette recorders and television sets, with Franklin's checks and then resell the items "on the street." According to defendant, this was done with Franklin's consent. Defendant further testified that he had never been in Franklin's apartment and did not rob or beat him.

In rebuttal, Franklin denied giving Pullin and Banks his checks and identification and denied ever seeing defendant prior to the robbery.

During deliberations, the jury sent two notes to the judge; one requested a definition of the term "dangerous weapon," and the other requested a clarification of the two jury instructions on home inva-

sion. The court defined the term and explained the two instructions on home invasion. Several hours later, the jury found defendant guilty of home invasion and aggravated battery but was unable to reach a unanimous decision on armed robbery. The court entered judgment on the charges of home invasion and aggravated battery. The State dismissed the armed robbery charge. Defendant's motion for new trial was denied.

A sentencing hearing was held but a presentence investigation report was not prepared as required under section 5—3—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—1). Instead, defendant was sentenced based on a pretrial investigation report prepared three months prior to the hearing which the court apparently believed was a presentence investigation report.

OPINION

I

■ Defendant claims the court's definition of "dangerous weapon" was erroneous and that it removed the jury's exclusive fact-finding province. During deliberations, in response to the jury's question, "[W]e would like you to define exactly what a dangerous weapon could be in this case," the court stated, over defense counsel's objection:

"That if you believed, and I underscore if you believe, you are the sole arbiters as to what facts are in this case, if you believe the victim's testimony that the defendant had a handgun whether loaded or unloaded, operable or not operable, when used as a bludgeon it is a dangerous weapon."

Defendant contends that the definition was erroneous because it is for the jury to determine whether a weapon is dangerous in the manner which it is used.

The State argues, *inter alia*, that the argument concerning the definition of dangerous weapon is irrelevant because the jury was not required to find the defendant used a dangerous weapon to support its verdicts of guilty on home invasion and aggravated battery. We agree.

Defendant was convicted of the following offenses:

"Sec. 12—11. Home invasion. (a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and

\*\*\*

(2) Intentionally causes any injury to any person or persons within such dwelling place." Ill. Rev. Stat. 1985, ch. 38, par. 12—11(a)(2).

"Sec. 12—4. Aggravated Battery. \*\*\*

(b) A person who, in committing a battery, commits aggravated battery if he either:

(1) Uses a deadly weapon." (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(1).)

Neither of these convictions involves a finding that defendant used a dangerous weapon. Although aggravated battery requires a finding of the use of a deadly weapon, the jury only requested a definition for dangerous weapon. Therefore, the court's definition of dangerous weapon did not relate to either of defendant's convictions.

Defendant argues that regardless of the offense he was convicted of, a reversal is required because the court's instruction improperly focused on the defendant's credibility and improperly referred to Franklin as the "victim."

When the jury raises an explicit question on a point of law arising from facts over which there is doubt or confusion, the court should attempt to clarify the issue in the minds of the jury members. (*People v. Sanders* (1984), 127 Ill. App. 3d 471, 469 N.E.2d 287.) This court has previously stated that the trial court should not answer a question from the jury which calls for the court to make a conclusion based on its evaluation of the evidence. *People v. Flynn* (1988), 172 Ill. App. 3d 318, 323; *People v. Bell* (1983), 113 Ill. App. 3d 588, 447 N.E.2d 909.

In the present case, we note the trial court should not have referred to the complaining witness as the "victim" and should not have couched the definition in terms of whether the jury believed the witness. We believe, however, when the instructions are considered as a whole, that the reference was not prejudicial. Accordingly, the court's definition of dangerous weapon does not warrant reversal of defendant's convictions.

## II

Defendant next contends that he was denied a fair trial because the State made several improper comments to the jury during closing arguments. Initially, we note that defendant did not object to two of these comments at trial and did not specifically raise any of the comments in his motion for new trial. The motion generally alleged that the State's closing argument was improper and specifically cited a comment by the State during closing argument which was not raised

in ths appeal. Consequently, none of the comments defendant now complains were improper were brought to the attention of the trial judge in the motion for new trial.

■■ When a defendant raises objections in his post-trial motion to specific remarks made in closing argument, the trial judge is given the opportunity to review his rulings in a less pressured environment and allows the judge to correct any errors at the trial court level, avoiding the delay and expense of appellate review. (*People v. Winston* (1982), 106 Ill. App. 3d 673, 435 N.E.2d 1327.) Defendant's failure to make a timely objection to the comments at trial or to specify them in his post-trial motion generally constitutes a waiver of any improprieties in closing argument. (*People v. Mitchell* (1984), 123 Ill. App. 3d 868, 463 N.E.2d 864.) A general allegation of improper closing argument in a motion for new trial does not sufficiently bring the issue to the trial court's attention and the omission of the specific remark alleged as erroneous precludes its consideration on appeal. *People v. Turk* (1981), 101 Ill. App. 3d 522, 428 N.E.2d 510.

When a defendant has not properly preserved his claim of error, appellate review is limited to the determination of whether the remarks were so prejudicial as to amount to plain error under Illinois Supreme Court Rule 615(a). (107 Ill. 2d R. 615(a).) We must therefore consider whether the State's comments "were so inflammatory that defendant could not have received a fair trial or flagrant as to threaten deterioration of the judicial process." *People v. Albanese* (1984), 104 Ill. 2d 504, 518, 473 N.E.2d 1246, 1251.

Initially, we note that the trial court orally cautioned the jury prior to and after closing arguments that closing arguments are not evidence and that the jury alone is the sole arbiter of evidence and the reasonable inferences therefrom. Additionally, the jury was given an instruction to the same effect which also stated that closing arguments not based on the evidence should be disregarded.

First, defendant contends that it was improper for the State to comment on the failure of the defense to call two witnesses, Pullin and Banks, whose testimony would presumably support defendant's explanation of the check-cashing scheme.

■■ As a general rule, it is improper for the State to comment on a defendant's failure to present witnesses when such witnesses are equally accessible to both parties (*People v. Eddington* (1984), 129 Ill. App. 3d 745, 473 N.E.2d 103); however, when locating witnesses is under the defendant's control or within his knowledge, comments on the failure to produce witnesses are not improper. *People v. Adams* (1985), 109 Ill. 2d 102, 485 N.E.2d 339.

■ In the present case, defendant testified that he was engaged to Pullin and that he was living with her and Banks at the time of the incident. He also testified he had spoken with Banks on the telephone after the first day of trial. Accordingly, the witnesses were not equally accessible to both parties because locating both witnesses was apparently under defendant's control or within his knowledge and, therefore, the State's comments were not improper.

Shortly thereafter, the State claimed that even if the witnesses were called to the stand they would not be able to keep their story straight. Any error that may have resulted was cured when the court promptly sustained defendant's objection to the comment and instructed the jury to disregard it. (*People v. Morgan* (1986), 112 Ill. 2d 111, 492 N.E.2d 1303.) Under the circumstances, we believe that the statement was not prejudicial.

The defendant also contends the following comments in rebuttal lessened the importance of the State's burden of proof:

"Now, Miss Placek [defense counsel] said it is our burden to prove the defendant guilty beyond a reasonable doubt, and it is. But don't let her stand up here and tell you it is an insurmountable burden that can never be achieved. Don't let her make it seem like that because it is not an insurmountable burden. That burden is met everyday in courtrooms like this. So don't let her make the burden sound like it is unattainable because it is not, and we have attained it in this case with this evidence that we have presented."

We note defendant did not object to these comments at trial. Defendant cites two cases that held similar remarks were improper; however, in both cases the reversals were based on grounds other than prosecutorial misconduct. (See *People v. Frazier* (1982), 107 Ill. App. 3d 1096, 438 N.E.2d 623; *People v. Martinez* (1979), 76 Ill. App. 3d 280, 395 N.E.2d 86.) In the present case, the remarks may have been improper; however, we believe that they do not rise to the level of plain error.

Defendant also finds error with the State's comment in rebuttal, "Don't fall for the defense tricks." From our review of the record, we find this was an isolated comment and an apparent response to defense counsel's closing argument that State's Attorneys used "tricks." In rebuttal, the State may make comments that are invited by defendant's closing argument. (*People v. Morando* (1988), 169 Ill. App. 3d 716, 523 N.E.2d 1061.) Accordingly, the comment was not improper.

Lastly, defendant contends that the State impermissibly aroused

the sympathies of the jury by focusing on the complainant's status as a widower and senior citizen. Defendant cites to only one instance where the State referred to the complainant as "a fella who is close to the age of being a senior citizen." The State then argued that the complainant was thus vulnerable to crime and that older persons are fearful of crime. We note that defendant did not object to this comment at trial.

Defendant cites *People v. Littlejohn* (1986), 144 Ill. App. 3d 813, 494 N.E.2d 677, for the proposition that it is improper to comment on the complainant's age where the only purpose is to distract the jury from the issues. From our review of *Littlejohn*, we believe the court found that the comment was improper not because it focused on the victim's age, but, rather, because it focused on events that the deceased victim would never experience, such as her first day at school. Even though the case does not support defendant's proposition, we do not believe the State's argument was designed for the sole purpose of distracting the jury from the issues. The evidence established the complainant was 58 years old, hit in the head with a gun, punched in the face several times, tied up, and blindfolded. When the State's comments are reviewed in context, we believe they were not improper because they were drawn from the evidence and reasonable inferences therefrom. *People v. Faysom* (1985), 131 Ill. App. 3d 517, 475 N.E.2d 945.

Defendant has waived the issue concerning improper comments during closing argument by not objecting to them at trial and not raising the comments with required specificity in his post-trial motion. We do not find that the comments, individually or in the aggregate, rise to the level of plain error.

### III

Next, defendant argues his conviction for aggravated battery must be vacated because it arose from the same physical act as the home invasion conviction. Defendant contends the aggravated battery conviction is a violation of the rule in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, that stated a defendant is prejudiced when he is convicted of more than one offense that is carved from the same physical act. We do not agree.

In the present case, the indictments for both offenses charged the same physical harm as a basis for both crimes. The aggravated battery indictment charged defendant caused "bodily harm" (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(1)) to Franklin by striking him in the head and face with a gun and the home invasion indictment charged

defendant "intentionally injured" (Ill. Rev. Stat. 1983, ch. 38, par. 12—11(a)(2)) Franklin, also by striking him in the head and face with a gun.

■ Concurrent convictions for aggravated battery and home invasion can be proper even though the indictment charges the same physical harm to the victim as the basis for both crimes. (*People v. Tate* (1982), 106 Ill. App. 3d 774, 436 N.E.2d 272.) In *People v. Triplett* (1985), 138 Ill. App. 3d 1070, 487 N.E.2d 39, we held that even though the indictments were based on the same physical harm, the evidence revealed multiple acts each of which could have constituted a separate basis for aggravated battery.

■ We reject defendant's characterization of this case as one where a single physical act was used to support convictions for home invasion and aggravated battery. Although the indictments rely on the same physical act, striking Franklin in the head and face with a gun, the evidence established that defendant also hit Franklin with his fists and, therefore, multiple physical acts are involved.

In *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844, the Illinois Supreme Court stated:

"Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts."

■ An offense is a lesser included offense of another when every element of the lesser offense is included in the greater offense or, in other words, it would be impossible to commit the greater offense without necessarily committing the lesser included offense. *People v. Dixon* (1984), 122 Ill. App. 3d 141, 460 N.E.2d 858.

■ In the present case, defendant was convicted of aggravated battery because he used a deadly weapon. (See Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(1).) Use of a deadly weapon is not an element of home invasion. (See Ill. Rev. Stat. 1985, ch. 38, par. 12—11(a)(2).) Accordingly, aggravated battery is not a lesser included offense of home invasion because every element of aggravated battery is not included in home invasion. Furthermore, although this is not defendant's argument, home invasion is not a lesser included offense of aggravated battery because home invasion requires entry of a dwelling place while aggravated battery does not.

Under the rule of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, defendant's convictions and concurrent sentences for ag-

gravated battery and home invasion are proper because the evidence establishes multiple physical acts and neither offense is a lesser included offense of the other.

## IV

■ Defendant argues his sentence should be vacated and the cause remanded for a new sentencing hearing because a presentence report was not prepared prior to his sentencing as required under section 5—3—1 of the Unified Code of Corrections. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—1.) The statute provides that "[a] defendant shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—1.) Instead of a presentence report, the court and counsel only had a pretrial report which was prepared three months earlier to consider for sentencing purposes. Despite the fact the report is clearly labelled "Pretrial Investigation Report," the record reveals that the court and counsel mistakenly referred to it as a presentence report. Defendant made no objection to the use of the pretrial report at the sentencing hearing. Defendant now complains that he was prejudiced by the use of the pretrial report because the court was not sufficiently informed of defendant's background and rehabilitative potential.

Defendant relies on the Illinois Supreme Court opinion in *People v. Youngbey* (1980), 82 Ill. 2d 556, 413 N.E.2d 416, that held a presentence report is a mandatory requirement in felony cases and cannot be waived by defendant. Defendant's reliance on *Youngbey* is misplaced because, in that case, defendant attempted to voluntarily waive the requirement of the presentence report and was sentenced without it. In the present case, the question is whether defendant waived the issue for appellate review when he failed to object at the trial level to the use of a pretrial report for sentencing purposes.

We believe the situation presented is analogous to cases where a deficient presentence report was used because defendant basically argues that the pretrial report did not contain all the information required for presentence reports.

"While it is the duty of the State to prepare a presentence report consistent with the directives of the statute, it is the defendant's duty to bring to the attention of the sentencing authority any alleged deficiency or inaccuracy in the report and any objections to the sufficiency of the report must first be presented to the trial court." (*People v. Laramore* (1987), 163 Ill. App. 3d 783, 793, 516 N.E.2d 401.) In *People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9, the Illinois Su-

preme Court found that a presentence report did not fully comply with the statutory requirements; however, the court held the error was not preserved for review because defendant did not object to the deficiency of the report to the trial court.

In the present case, defendant failed to object to the date of the report or its alleged deficiencies at the trial court level. Accordingly, following *Meeks*, we find defendant has waived consideration of this issue on appeal. Additionally, we make no comment as to whether a pretrial report sufficiently complies with the requirements of a presentence report under section 5—3—2 of the Unified Code of Corrections. Ill. Rev. Stat. 1985, ch. 38, par. 1005—3—2.

V

Lastly, we grant the State's request to assess the sum of $50 against defendant as costs for this appeal (Ill. Rev. Stat. 1985, ch. 53, par. 8(a); *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194), and the sum of $25 as costs for oral argument (Ill. Rev. Stat. 1985, ch. 53, par. 8(a); *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319).

Judgment affirmed.

SULLIVAN and MURRAY, JJ., concur.