THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANKIE LANN, Defendant-Appellant.

First District (2nd Division)   No. 1—85—1184

Opinion filed February 13, 1990.

Michael J. Pelletier and Thomas J. Long, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Lauren A. Freeman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

After a jury trial, defendant was convicted of armed robbery, aggravated kidnapping, kidnapping, and aggravated battery. He argues his convictions should be reversed because he was denied a fair trial based on improper comments made by the prosecutor during closing argument and because the State failed to provide him with material exculpatory evidence in response to his specific discovery request. He further contends that he is entitled to a remand under *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, for a hearing on whether the State used its peremptory challenges to improperly exclude blacks from the jury. We agree that defendant is entitled to a *Batson* hearing, but we otherwise affirm the convictions.

The complaining witness in this case, Anthony Grandberry, was a 16-year-old high school student at the time of the events in question. He testified at trial that he was waiting for a bus at 93rd and Perry streets in Chicago on the morning of May 25, 1983, at approximately 7:30 or 8 a.m., and that while he was waiting, a brown Mercury automobile stopped next to him. The driver rolled down his window, stated that he was a police officer, displayed a badge, and told Grandberry to get up against the car; Grandberry identified the driver in court as defendant. Defendant then handcuffed Grandberry, sat him in the right front seat of the car, and drove for 5 to 10 minutes to a nearby Jewel Food Store parking lot.

After accusing Grandberry of having stolen some money from him, defendant placed a skull cap on Grandberry's head, taped his eyes and mouth shut, had him lie facedown on the floor in the back of the car, and drove away. After 5 or 10 minutes, Grandberry was told to get out of the car. He felt someone grab each of his shoulders and heard more than one person's footsteps as he was walked into a building.

Once inside the building, Grandberry was beaten with a hammer, and three gold chains, some money, a set of house keys, and a wallet were taken from him. After lying on the floor for a time, he managed to partially remove the tape from his eyes and the hat from his head, which enabled him to look about the room and see defendant. When defendant realized Grandberry could see him, he kicked Grandberry in the eye. Shortly thereafter, Grandberry heard a car door slam and began shouting for help. Defendant placed a large gun with a brown

handle to Grandberry's head, and after telling him to shut up, defendant struck Grandberry on the back of his head with the gun, causing him to black out.

When he regained consciousness, Grandberry saw that defendant had fallen asleep on the couch. He grabbed the gun and left the building through the back exit, but Grandberry dropped the gun while he was walking down the alley in the rear of the building. He went into a nearby tavern and asked someone inside to call the police.

Chicago police officer Ronald Alston also testified for the prosecution. Alston, who had responded to the call for police assistance, stated that after Grandberry led him to the back of the building where he had been taken, Alston saw defendant standing in the rear doorway. He also noticed a brown, four-door car parked in the alley. Grandberry identified defendant, who was then arrested.

Alston further testified that he had inventoried all physical evidence found in searching the defendant and the premises: a gold badge was found on defendant's person; a bloodstained blue skull cap, a bloodstained hammer, some used gray tape, and a black wallet were found on the premises; and a small starter's pistol was found in the alley, but this gun was not identified as the gun dropped by Grandberry, and no other gun was found. Due to a mistake by the police, all physical evidence except the gun was destroyed before trial; however, some of these objects were photographed, and the photographs were admitted into evidence. Alston also testified that to his knowledge, no fingerprints were lifted from the brown car parked in the alley.

Doctor Kunxunni Vellody was the third prosecution witness. He testified regarding the nature and extent of Grandberry's injuries, and stated that they resulted from a beating with some sort of hard object.

Defendant testified that he left the apartment of Alfreida Coleman, his girlfriend, at approximately 8 a.m. on the morning of May 25. He took a cab to a house at 8949 S. Throop, where he lived with his mother, Melissa Lenoir, and his grandmother, arriving there at approximately 8:30 a.m. Defendant left the house at 9, intending to take the train downtown. However, he walked instead to a nearby print shop and spoke with John Epps, an acquaintance who worked there. They smoked a marijuana cigarette together behind the shop, after which Epps went back to work. Defendant then noticed a brown, four-door Mercury parked in the alley just south of the print shop. He knew the car belonged to his barber Rasheed, and it was parked behind Rasheed's barbershop. Defendant decided to get a quick haircut and walked to the rear door of the barbershop, which was open.

While he was unsure of the exact time he left the print shop, he testified that it was no later than 9:45 a.m.

Defendant further testified that he found a wallet lying in the doorway of the barbershop. As he walked toward the front of the shop, he opened the wallet and discovered it contained a gold badge. No one was in the shop, and the front door was locked. He then walked out the back door, saw eight police officers in the alley, and was arrested.

Three alibi witnesses also testified on defendant's behalf: Alfreida Coleman, defendant's girlfriend, stated that he left her apartment at approximately 8:10 a.m. on the morning of May 25; defendant's mother's testimony was that defendant was in the house with her from 8:30 to 9 a.m.; and John Epps testified that defendant was with him at the print shop from approximately 9:05 until 9:30 a.m.

The jury returned guilty verdicts on the armed robbery, aggravated kidnapping, kidnapping and aggravated battery counts on April 3, 1985. On April 24, 1985, the trial judge heard and denied defendant's post-trial motion for a new trial and sentenced him to 13 years' imprisonment. A notice of appeal was filed on April 25, 1985.

On May 23, 1985, defendant filed an amended motion for a new trial, which stated that the prosecution had failed to provide defendant with a laboratory report that indicated a fingerprint found on the car used to commit the offense did not belong to defendant. That same day, this court granted defendant's motion to dismiss the appeal for purposes of providing the trial court with jurisdiction to hear the amended motion; the dismissal was without prejudice to defendant's right to appeal from the original conviction. The trial court heard oral argument and denied the amended motion for a new trial on May 23.

I

■■ Defendant first argues that he was denied a fair trial based on improper remarks made by the prosecutor during closing argument. In his post-trial motion, defendant made the following allegations:

> "15. The State's Attorneys made prejudicial, inflammatory and erroneous statements in closing and rebuttal arguments designed to arouse the prejudices and passions of the jury prejudicing the Defendant's right to a fair trial.
>
> 16. The Assistant State's Attorneys made prejudicial, inflammatory and erroneous statements in closing and rebuttal arguments directed at defense counsel and defense 'tactics' and defense counsel's 'trial strategy,' prejudicing the Defendant's

right to a fair trial."

We hold that these general allegations are insufficient to preserve the issue for review. "A general allegation of improper closing argument in a motion for new trial does not sufficiently bring the issue to the trial court's attention and the omission of the specific remark alleged as erroneous precludes its consideration on appeal." *People v. Doe* (1988), 175 Ill. App. 3d 371, 377, 529 N.E.2d 980, 984, *appeal denied* (1989), 124 Ill. 2d 557; see also *People v. Sargent* (1989), 184 Ill. App. 3d 1016, 540 N.E.2d 981; *People v. Powell* (1989), 180 Ill. App. 3d 315, 532 N.E.2d 1008, *appeal denied* (1989), 127 Ill. 2d 634.

■■ However, defendant correctly notes that the waiver rule does not preclude us from taking notice of plain error within the meaning of Illinois Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)). (*People v. Phillips* (1989), 127 Ill. 2d 499, 538 N.E.2d 500; *Doe*, 175 Ill. App. 3d 371, 529 N.E.2d 980.) But before reaching the question of whether the allegedly improper remarks rise to the level of plain error, we must decide as a threshold matter whether reversible error has occurred. (*People v. Wade* (1989), 131 Ill. 2d 370, 375-76, 546 N.E.2d 553, 555; *People v. Young* (1989), 128 Ill. 2d 1, 54, 538 N.E.2d 461, 475.) Consequently, our analysis begins with an inquiry into whether reversal would have been required had defendant's objections been adequately preserved in his post-trial motion.

■■ Our supreme court has repeatedly set forth the heavy burden of persuasion falling on a defendant seeking to reverse a conviction on the ground of improper prosecutorial remarks made during closing argument:

" 'Attorneys are allowed considerable leeway in making closing and rebuttal arguments. "The character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial judge *** properly exercised the discretion vested in him." ' " (*People v. Sims* (1988), 121 Ill. 2d 259, 269, 520 N.E.2d 308, 312, quoting *People v. Morgan* (1986), 112 Ill. 2d 111, 131, 492 N.E.2d 1303, 1310, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 180, 107 S. Ct. 1329, and *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324, 327.)

A trial court's decision to deny a motion for a new trial due to improper prosecutorial remarks made during closing argument will be reversed only if the remarks resulted in substantial prejudice to the defendant and if they "constituted a material factor in defendant's conviction, without which the jury might have reached a different result." *People v. Thompkins*, 121 Ill. 2d at 445, 521 N.E.2d at 57,

*cert. denied* (1988), 488 U.S. 871, 102 L. Ed. 2d 156, 109 S. Ct. 187.

■ Applying these standards to the specific remarks at issue here, we do not find the trial court's failure to grant a new trial to be reversible error. First, defendant claims that the prosecutor misstated the law regarding the role of the jury and the burden of proof. These assertions are based on the following comments:

> "MR. NOWICKI [Assistant State's Attorney]: What we have had in this courtroom for the last two days is a liar or a group of liars. Nothing more and nothing less. Your job as jurors will be to sit down collectively and determine who are the liars.
>
> * * *
>
> MR. NOWICKI: Your intuition, your experience as peers is enough. People have lied to you in your life and people have told you the truth. That's your job. That's your job in this case to determine who is lying and who is telling the truth. Anthony Grandberry is not mistaken. If anything, if you don't believe him, he is a liar * * *.
>
> MR. KURZ [defense attorney]: Objection."

Defendant argues that these remarks misstate the law by distorting the burden of proof, and imply that defendant can be convicted on less than evidence establishing guilt beyond a reasonable doubt. See *People v. Crossno* (1981), 93 Ill. App. 3d 808, 417 N.E.2d 827.

We disagree with defendant's characterization of these arguments as misstatements of law. The prosecutor here is doing no more than properly advising the jury that they have the responsibility of determining the credibility of the witnesses. *People v. Johnson* (1986), 114 Ill. 2d 170, 499 N.E.2d 1355, *cert. denied* (1987), 480 U.S. 951, 94 L. Ed. 2d 802, 107 S. Ct. 1618.

Defendant complains further that the prosecutor improperly attacked the character and methods of defense counsel, and that he made a number of factually unsupported and inflammatory remarks. The exchanges on which defendant bases his claim are set forth below:

> "MR. NOWICKI: Mr. Kurz tried, and Mr. Kurz has been doing this for a long time and he had an 18-year old boy [the victim] up there. This is fresh meat.
>
> MR. KURZ: I object to characterization.
>
> THE COURT: Overruled. He can characterize or use descriptive words in his argument.
>
> MR. NOWICKI: Mr. Kurz is experienced at putting words in people's mouth.
>
> MR. KURZ: Objection.

THE COURT: Do not make reference to other attorneys that are discouraging [sic]. Continue your argument.

\* \* \*

MR. NOWICKI: It's different than the one the boy described, but since it's not the right gun I'm [referring to police officer Alston] going to leave it there. I don't want to put it in my police report because later some defense attorney is going to make a big deal out of it and hurt the case and make the boy look like a liar.

MR. KURZ: Objection.

THE COURT: Overruled. I believe he can properly respond to your argument concerning the gun and its relevancy to this case.

MR. KURZ: Your Honor, my objection as [sic] to what some defense attorney is going to do some time later down the line.

THE COURT: As long as he doesn't cast personal expursions [sic] on you you may argue or answer what you have argued or presented in this case.

\* \* \*

MR. NOWICKI: Now, you see the sleight of hand.

MR. KURZ: Objection, Your Honor.

MR. NOWICKI: Now we begin—.

THE COURT: What's your objection?

MR. KURZ: To the sleight of hand characterization by Assistant State's Attorney to the jury.

THE COURT: Well, it's not apparent that the attorney personally is being criticized. I will let him continue his argument and I'm reserving my ruling on it.

\* \* \*

MR. NOWICKI: My partner on various occasions during his argument referred to the Defendant as the man, this man this, that man that. I think he was being quite charitable, because I would submit to you that anybody that would take a 16-year-old 5-foot-4 boy off the street under the guise of a police officer, tape that boy up, put that boy through the ultimate of terror, beat a defenseless child and that boy may have been 16 but physically he was a child. And cause him to endure the injuries that you heard the doctor testify is far, far from any definition of a man. You heard in court here the whole story as it turned out. But this very well could have been a different story. You don't know and I don't know how this story may have ended if he hadn't woke up.

MR. KURZ: Objection.

THE COURT: Overruled. I think it's proper argument.

MR. NOWICKI: The armed robbery was completed. If all he wanted to do was sleep, if all he wanted to do was take the money he had but he wanted more. He wanted more from that boy. I don't know what it was and I thank God you don't sit here finding out what it was.

MR. KURZ: Objection.

THE COURT: Counsel may argue reasonable inferences from the evidence and it may be that we are going a little far afield. Continue with your argument.

\* \* \*

MR. NOWICKI: Anthony Grandberry has been a victim, definitely a victim. Don't make him a victim for a second time. He had to take that stand and he had to relive what he went through. Make it the last time he has to relive that. Let him sleep well at night knowing that he's no longer on the street.

MR. KURZ: Objection.

THE COURT: I'm not sure that's improper.

MR. NOWICKI: Ladies and gentlemen, I ask you return your verdicts of guilty. Thank you."

The State argues that some of these remarks were invited by statements made by defense counsel, and that any possible prejudice was cured by instructions given by the trial judge or because some of defendant's objections were sustained. While we find some merit in these contentions, it is not necessary to review them in detail, for given the nature of the evidence of guilt in this case, it cannot be said that any of the remarks individually or that all of them taken collectively caused defendant substantial prejudice within the meaning of *Thompkins*. The victim had more than ample time to observe his kidnapper, whom he identified as defendant at trial and at the scene of the crime. Grandberry sat in the front seat of a car, in very close proximity to defendant, who was driving, for 5 to 10 minutes before his eyes were taped shut; he again observed defendant when he was able to partially remove the tape and a hat which was used to obstruct his vision; and he had a final opportunity to observe defendant just before his escape. In light of his considerable evidence of guilt, the allegedly improper remarks could not have affected the guilty verdict returned by the jury.

Since we find that the trial judge's denial of defendant's post-trial motion for a new trial based on prejudicial prosecutorial remarks would not have required reversal had the issue been properly pre-

served for review, defendant's reliance on the plain error rule is unavailing. The remarks complained of here are not sufficient grounds for disturbing the conviction.

## II

Defendant next argues that his conviction should be reversed because the State failed to provide him with material exculpatory evidence in violation of Supreme Court Rule 412 (107 Ill. 2d R. 412.) We find this contention is equally untenable and therefore does not present grounds for reversing the conviction.

In his motion for pretrial discovery, defendant requested that the State provide him with "any reports of statements of experts *** including results of *** scientific tests, experiments, or comparisons." He also requested any material or information in the State's possession that would tend to negate his guilt or lessen his punishment. Four weeks after defendant was convicted and sentenced, defense counsel was advised that the State had inadvertently failed to disclose the existence of a fingerprint examination report prepared before the trial began which indicated that a fingerprint found on the car used in the offense did not belong to defendant.

Defendant filed an amended motion for a new trial, which was denied on the ground that the evidence was not material because it was not of such conclusive character that it would probably have changed the verdict. The judge noted that the defendant had not established that the print was taken from a location accessible only to the person who committed the crime. Defendant argues that the trial judge applied an incorrect standard in determining the materiality of the discovery report.

We hold that the trial judge used the proper analysis and reached a correct conclusion. Violations of the pretrial discovery requirements of Rule 412 are governed by the same standard of Federal due process claims decided under *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and its progeny. (*People v. Curry* (1988), 167 Ill. App. 3d 146, 520 N.E.2d 984; *People v. Bouska* (1983), 118 Ill. App. 3d 595, 455 N.E.2d 257.) Under *Brady*, the prosecution is required to disclose evidence favorable to the accused that is material either to guilt or to punishment. Regardless of whether a discovery request is characterized as specific or general, or whether a discovery request is made at all, the State is required to apprise defendant of any exculpatory evidence if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probabil-

ity' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley* (1985), 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383; see also *Curry*, 167 Ill. App. 3d 146, 520 N.E.2d 984.

■ Applying this standard, it cannot be said that failure to disclose the fingerprint report is sufficient to undermine the confidence in the outcome. As noted earlier, the State has presented overwhelming evidence of guilt, and, as the trial judge correctly found, the report has little probative value. Failure to disclose the report is therefore not grounds for overturning the conviction.

### III

One of the assertions raised in defendant's post-trial motion was that "[t]he Court erred in not granting the numerous motions for mistrials the defense made after each and every systamatic [*sic*] exclusion of blacks from the jury by the Assistant State's Attorneys." This motion was denied on April 24, 1985. One year later, during the pendency of this appeal, the U.S. Supreme Court decided *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, which held that a State's purposeful or deliberate denial to black citizens, on account of race, of participation as jurors in the administration of justice violates the equal protection clause of the fourteenth amendment. Defendant asserts that he is entitled to a remand for a *Batson* hearing on whether the State improperly excluded blacks from the jury. See *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453; *People v. Hooper* (1987), 118 Ill. 2d 244, 506 N.E.2d 1305.

■ We agree that a remand is appropriate. The *Batson* holding is retroactively applicable to all cases pending on direct review at the time *Batson* was announced. (*People v. McDonald* (1988), 125 Ill. 2d 182, 530 N.E.2d 1351.) While the State argues that this issue is waived because defendant failed to make a record as to the race of each venire person challenged during jury selection, no case law is cited supporting this proposition. To the contrary, the Illinois Supreme Court has recently held that deficiencies in the *voir dire* record do not result in wavier of a *Batson* claim. *McDonald*, 125 Ill. 2d 182, 530 N.E.2d 1351.

For the foregoing reasons, we affirm the conviction and remand to the trial court for a *Batson* hearing.

Affirmed and remanded.

DiVITO, P.J., and BILANDIC, J., concur.