THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT PAGLIARA, a/k/a Robert Sells, Defendant-Appellant.

First District (2nd Division)    No. 76-86

Opinion filed March 29, 1977.

Elliot M. Samuels, of Samuels & Weininger, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Paul Benjamin Linton, and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, Robert Pagliara, was charged by indictment with the offense of possession of 300 grams of PCP, a derivative of phencyclidine and a controlled substance, in violation of section 402 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1971, ch. 56½, par. 1402(a)). Upon a bench trial defendant was found to be guilty as charged. Judgment was entered on the finding and defendant was sentenced to serve a term of probation of five years, the first year of which to be served in the Department of Corrections under conditions of periodic imprisonment.

From entry of the judgment of conviction defendant appeals. The following issues are presented for our consideration: (1) whether the trial court erred in denying defendant's motion to suppress as evidence certain contraband and oral statements allegedly obtained in contravention of defendant's constitutional rights; (2) whether the trial court erred in admitting into evidence the aforementioned contraband due to an alleged failure to adequately establish a chain of custody and possession; and (3) whether the evidence properly adduced at trial was sufficient to establish defendant's possession of the aforementioned contraband beyond a reasonable doubt.

A review of the facts reveals that at approximately 2:48 a.m. on May 13, 1973, defendant was unsuccessfully attempting to start an automobile that had been parked so as to block an alley in the vicinity of 418 Main Street in Lemont, Illinois. The vehicle was owned by Robert and Cheryl Sells. At trial, defendant indicated that he occasionally used the vehicle; that the last time he had been in the vehicle was approximately two weeks prior to the incident; that the Sells had loaned him the automobile for the evening on the date of the incident; and that they "gave" defendant title to the vehicle a few days thereafter.

Defendant, as sole occupant of the vehicle, was in the driver's seat when he was approached by Lemont Police Department Corporal Donald Wiegand. Wiegand placed a radio message for assistance to his partner, Charles Wood, and inquired of defendant as to his identity and the ownership of the vehicle in defendant's possession. Defendant told Wiegand that he had no personal identification on his person but that such documents might be obtained from a nearby apartment. Officer Wood

accompanied defendant to the apartment building and waited outside the door while defendant entered an upstairs apartment.

During this time, Cheryl Sells, descended to the street, approached Wiegand, identified herself, and showed Wiegand a certificate of title to the vehicle in which defendant had been seated. Wiegand asked her if defendant was her husband. She did not reply. Wiegand insisted upon verifying defendant's driver's license.

Defendant did not possess such license. However, he returned to the scene bearing a traffic citation which had been issued in the name of one Robert Sells. At trial, defendant admitted that he had obtained the citation from the Sells' apartment, with Robert Sells' permission, for the purpose of providing false identification to the investigating officers.

As defendant walked toward Wiegand, defendant dropped the traffic citation to the ground, bent down to retrieve it, and as he arose Wiegand had occasion to observe a plastic bag hanging from defendant's belt. Wiegand seized the bag, placed defendant under arrest, and informed defendant of his constitutional rights. The bag was subsequently discovered to contain quantities of chemical contraband. This contraband was suppressed as evidence prior to trial of the instant cause and the propriety of such suppression is not at issue in the case presently at bar.

Defendant was then asked by the officers if they could search the automobile. Defendant responded, "Go ahead and search." Defendant personally removed the key from the ignition, opened the door of the automobile, and then opened the trunk of the vehicle with an additional key then in his possession. Officer Wood searched the interior of the vehicle and in an area described as being under the dashboard near the heater duct by the firewall, Wood discovered two plastic bags. One contained a white powdered substance and the other contained $6,000 in United States currency. The bags were shown to defendant who responded, "Where did that come from?" Wood handed the two newly recovered bags to Wiegand who summoned their supervisor, Sergeant Richard Stech.

Upon his arrival on the scene, Stech was presented with the plastic bags and their contents by Wiegand. Stech examined the bag containing white powder and found that it contained smaller bags surrounding the white powder which had been formed into balls of an unspecified diameter. Stech personally transported the evidence to the Lemont Police Department.

At the station house, Stech attempted to question defendant. Defendant alternatively stated that his name was Robert B. Sells and Robert Pagliara. Defendant's fingerprints were shown to be those of Robert Pagliara. Defendant indicated that he would not speak to Stech but expressed a

willingness to talk to Agent Fred Garcia of the Cook County Sheriff's Police. A telephone connection was established between defendant and Garcia. Stech was present in the room in which defendant was situated.

According to Stech, defendant asked Garcia, "What kind of a deal can we make?" Defendant then offered, "You could take the money" and he (defendant) would retain "the stuff."

Again, upon completion of the telephone call, defendant informed Stech that he knew the officer was tired and was poorly remunerated for his services. Whereupon defendant offered Stech the money recovered from the automobile to cover Stech's inconvenience. According to the terms of the proposed bargain defendant would retain "the stuff." Defendant was then processed and incarcerated.

Stech placed the plastic bag of white powder in a metal cabinet located on police property. The plastic bag containing the recovered currency was inventoried and it too was placed in the cabinet. The cabinet was locked. Stech testified that the cabinet has a double lock to which only he and the chief of police possessed keys and that the only other items in the cabinet on the date in question were official documents.

Later that morning, Stech removed the plastic bag containing the white powder from the cabinet in which it had been stored. Stech transported it to the Cook County Sheriff's Police Station in Bedford Park, Illinois. The substance was field tested and produced a chemical reaction indicating that the substance was either cocaine or PCP. Officer Jones weighed and photographed the powder, placed it in evidence bags and initialed each bag. The bags were then placed in the sheriff's narcotics locker.

Defendant was transported to Bedford Park Station where he again spoke to Sergeant Stech. Defendant again offered to allow Stech to keep the money seized from the vehicle in exchange for defendant's release. Defendant was then incarcerated in the Bedford Park detention facility.

Jones subsequently removed the narcotics from the locker and transported it to the Chicago Crime Laboratory where he deposited the contraband and was given a receipt. The recovered currency was transferred to an agent of the Internal Revenue Service.

Officer Jones subsequently returned to the Chicago Crime Laboratory where, after signing for the evidence, he received an envelope containing the contraband. The envelope was dated and bore the Crime Laboratory case number. Chemical analysis performed at the laboratory indicated that the substance was a derivative of PCP, otherwise known as phencyclidine, a controlled substance. The analysis was duly performed by a qualified expert chemist who replaced the substance in its plastic container, resealed and stapled the bag, and placed it in another plastic bag which he sealed by means of a heating machine.

Upon receiving the evidence from the Chicago Crime Laboratory,

Jones transported the narcotics to the Bedford Park Sheriff's facilities where they were stored in the narcotics safe and removed by Jones as required for court appearances.

Defendant initially contends that the trial court erred in denying defendant's motion to suppress as evidence the narcotics recovered from the automobile in defendant's possession as being the product of an arrest effected without probable cause. The State concedes that this arrest, which occurred prior to the search of the vehicle, was improper. However, the State urges that defendant consented to the search of the vehicle; that such consent was voluntarily given; and hence, that the evidence recovered as a result of the search was properly adduced at trial.

■■ It is well settled that consent to what might otherwise constitute an unreasonable search constitutes a waiver of the constitutional privilege. (*People v. Hampton* (1972), 5 Ill. App. 3d 220, 282 N.E.2d 469.) The burden is on the prosecution to establish by clear and positive testimony that consent to a warrantless search was voluntarily given and not the product of coercion. (*People v. Ledferd* (1967), 38 Ill. 2d 607, 232 N.E.2d 684; *People v. DeMorrow* (1974), 59 Ill. 2d 352, 320 N.E.2d 1.) Whether valid consent has been given is a question of fact to be determined initially by the trial court, and where the evidence on this issue is conflicting this court will uphold the finding of the trial court unless it is clearly unreasonable. (*People v. Ledferd.*) Such finding by the trial court must consider the totality of circumstances surrounding the giving of the consent in order to determine its voluntariness. This is true regardless of the fact that the consenting party may be in custody. *People v. Ledferd.*

■■ A review of the facts in the case at bar indicates that defendant's consent was voluntary and effective. There is no evidence that at the time of his arrest defendant was the object of any duress or coercion, either actual or implied. Defendant admitted that after he was placed under arrest he was advised that it was his right to remain silent and to refuse to answer questions without the presence of an attorney. At trial defense counsel stipulated that defendant was fully advised of his constitutional rights as required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. There is no showing that defendant was interrogated or that he asked to speak to an attorney. Defendant testified that the officers did not draw their weapons. Nor was defendant handcuffed at the time of the search. Defendant's associates were situated in the immediate vicinity of the arrest. Defendant's consent to search the vehicle was unequivocal and specific. He personally obtained the key to the vehicle's trunk and assisted the officer by opening it. In view of this total lack of coercion or compulsion the trial court properly found that defendant's

consent was voluntary and the evidence acquired as a result of this search was properly adduced at trial.

■■ Within this context, defendant also suggests that the trial court erroneously admitted into evidence testimony regarding defendant's various attempts to bribe the arresting officers in order to secure his release from custody. We note that defendant was properly arrested for possession of narcotics recovered during the course of a valid search of the vehicle in defendant's possession. The statements in question were made subsequent thereto and after defendant had been fully admonished as to his constitutional rights. There is no showing that the statements were in any way coerced. Indeed, we are confident that defendant's deliberate and unsolicited attempts to bribe Officers Stech and Garcia were sufficiently acts of free will to purge the taint of any police misconduct occurring prior to the search so as to permit the introduction of such statements at trial. *Cf. Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.

■■ Defendant next contends that the trial court erred in admitting into evidence the aforementioned contraband due to an alleged failure to adequately establish a chain of custody and possession. The rule is well established that a foundation for the admission in evidence may be made through its identification by a witness or through establishment of a chain of possession. To require both identification of the object and establishment of a chain of possession would impose an unnecessary burden and would not assure a fairer trial to the accused. (*People v. Sansone* (1976), 42 Ill. App. 3d 512, 356 N.E.2d 101.) There is not the slightest proof in the record of any substitution or any form of tampering with the contraband recovered from defendant's vehicle other than the scientific testing of the contraband. The prosecution was not required to exclude all possibility of tampering. All that is required is that there be only the reasonable probability that the article has not been changed in any important respect. (*People v. Marquis* (1974), 24 Ill. App. 3d 653, 321 N.E.2d 480.) A review of the record clearly indicates that the State established a proper foundation for the introduction into evidence of the contraband by describing a continuous chain of possession in elaborate detail. The trial court's ruling was proper.

Defendant finally contends that the evidence adduced at trial was insufficient to establish his possession of the contraband beyond a reasonable doubt.

In order to support a conviction for unlawful possession of contraband, the State must establish beyond a reasonable doubt not only that the accused had knowledge of the presence of contraband, but also that the contraband was in the accused's possession and control. (*People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370.) Knowledge of the

location of contraband, although an element, is not the equivalent of possession. *People v. Jackson* (1961), 23 Ill. 2d 360, 178 N.E.2d 320.

■■ A review of the evidence adduced in the case at bar yields a sufficient factual basis to support defendant's constructive possession of PCP. The contraband was recovered from its concealed position in an automobile over which defendant had exerted sole dominion immediately prior to his arrest and on earlier occasions. (*Cf. People v. Huth* (1977), 45 Ill. App. 3d 910, 360 N.E.2d 408.) Defendant's several subsequent attempts to secure his release by bribing the arresting officers while retaining possession of the contraband, as well as his attempt to avoid prosecution by presenting false identification to the investigating officers, are matters which serve to establish defendant's knowledge of contraband within his exclusive control. (*Cf. People v. Mack* (1957), 12 Ill. 2d 151, 145 N.E.2d 609.) We are satisfied that defendant's guilt of the offense charged was established beyond a reasonable doubt.

For the above reasons the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

DOWNING, P. J., and PERLIN, J., concur.