THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CLIFTON EVANS, Defendant-Appellant.

First District (2nd Division)   No. 78-2123

Opinion filed December 31, 1979.

88

Marshall R. Weinberg, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Defendant Clifton Evans, charged by information with one count of bribery (Ill. Rev. Stat. 1975, ch. 38, par. 33—1(a)), two counts of possession of a controlled substance and one count of possession of counterfeit prescription forms, in violation of the Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, pars. 1402(b), 1406(b)(6)), was found guilty of three counts by the trial court sitting without a jury and sentenced to five years probation, the first two years to be served in a work-release program. From the judgment on that finding defendant appeals.

The issues raised on review are whether defendant was proved guilty beyond a reasonable doubt of the charges of unlawful possession of the controlled substances of valium and ritalin and of bribery.

The bench trial commenced on September 12, 1978. The State's chief witnesses were Chicago Police Officers Warren Duhig and Robert Lanning, who testified that on October 11, 1976, they were on midnight watch patrol. At approximately 2 a.m., at 4560 South Indiana, Chicago, they observed a Cadillac automobile with its trunk open double parked and a taxicab double parked behind it. Duhig and Lanning approached two men standing near the open trunk and inquired as to what they were doing. Defendant and the taxi driver replied that the cab was giving defendant's car a "jump." Both officers recognized defendant, having questioned and searched him an hour earlier that evening, recovering a knife and a prescription for ritalin in defendant's name. During that investigation, a computer name-check made at the police station had elicited no information, and the officers had released him.

At this second encounter, as defendant explained why he was parked there, Duhig glanced into the open trunk of the Cadillac and observed a shopping bag containing vials, pills and prescription blank forms. At the trial he identified and read for the court each of the various prescriptions

recovered from defendant's trunk. Each prescription was for 90 pills of 20 mg. of ritalin, signed by a Dr. Louis Coggs, and made out to various people, including defense witness David Barrett. Duhig also identified a calendar book with prescription labels pasted inside which was recovered from defendant's trunk. When asked by Officer Duhig whose prescriptions and labels were in the shopping bag, defendant replied that some were his and some were not. Lanning testified that Duhig's question was whether the pills in the bag belonged to defendant, and that defendant replied that some were his and some belonged to his friends. At this point Duhig arrested defendant and transported him to the police station by squadrol while Lanning drove there in defendant's car.

Defendant was taken to an interrogation room and advised of his constitutional rights. Lanning testified that defendant was seated at a table with his left wrist handcuffed to a ring in the wall. The contents of the shopping bag were emptied onto the table and separated, with cash found in the bag placed in front of defendant. Defendant asked whether his car would be towed; when Lanning said yes, defendant requested him to retrieve some money hidden under the floor mat, which he did, placing the money in the pile with the other currency. Defendant inquired about his bond, stating he had to go to work the following day in order to appear before a board regarding a job grievance. He was informed that possession of narcotics was a "judge's bond," and that the officers had no authority to determine the amount. Duhig testified that defendant asked him if he could be released and, upon receiving a negative response, defendant pointed to the money on the table and said, "[h]ere, I got to make it to work tomorrow." When Lanning returned, he and Duhig had a conversation in the hallway, following which Lanning went for the desk sergeant, and Duhig went back into the interrogation room. Lanning returned to the room with Police Sergeant Edward Boyte, joining Duhig and defendant. All three officers testified that defendant then talked with Boyte concerning whether he understood his rights, and then defendant pushed the money toward the policemen urging them to take it and let him go, while repeating his assertion that he must go to work the next day. At that point defendant was charged with bribery in addition to the violations of the Controlled Substances Act.

Gerald B. Pazin, a forensic chemist employed by the Chicago Police Department, testified for the State that his analysis of the substances recovered from defendant were methylphenidate (ritalin) and diazepam (valium), contained in State's exhibits Nos. 18 and 19 respectively.

At the close of the State's case, defendant successfully moved to dismiss count IV of the information charging possession of counterfeit prescription forms, based upon the State's failure to prove the violation charged. It was then stipulated that if the druggist who dispensed the

State's exhibit No. 17, which was ritalin prescribed for defendant, were called as a witness, he would testify that he dispensed 29 tablets of ritalin to defendant pursuant to a prescription.

David L. Barrett testified for the defense that he did maintenance work on a building owned by defendant. He identified the State's exhibit No. 19, which was a prescription vial in his name containing valium. Barrett testified that a Dr. Coggs had prescribed the pills for pain. They came into defendant's possession because in October of 1976, while cleaning in a building, Barrett placed them in the bag in defendant's automobile trunk. Barrett did not request the return of the pills until two or three weeks prior to the time of his testimony on September 14, 1978.

Defendant testified in his own behalf. He stated that David Barrett maintained his building and that a man named LaGrone had also done some maintenance work and had stayed in the building for a day or two or a week or two. Willie Robinson, whose prescription was found in defendant's trunk, had also been a tenant in one of the buildings. Defendant had washed cars with LaGrone and kept rags in the trunk of his car, and that must have been how LaGrone's prescription came to be in his trunk. He did not know that David Barrett's prescription was in the trunk of his car when the police stopped him, nor how it could have gotten there. Defendant denied bribing the police or pushing the money toward the officers because, according to him, his right arm had been handcuffed to the wall, making such a motion impossible, and claimed he was told he would be brought before a judge who was available. The State read into the record defendant's prior conviction for bribery. Defendant admitted the conviction but maintained his innocence in the matter.

At the close of all the evidence, the court found the testimony of defendant and of defense witness Barrett to be "* * * inconsistent, contrary and not credible," and found defendant guilty as charged of counts I, II and III of the information. Defendant was sentenced to five years probation, with the first two years to be served in the work-release program.

## I.

Defendant initially contends that the trial court erred in finding him guilty beyond a reasonable doubt of unlawful possession of valium and ritalin, both controlled substances under the Act, because "* * * the necessary element of unlawful or unauthorized possession was never proven by the State." He suggests that if a person brings home a prescription for his friend, wife or child, he commits no crime because he is holding a prescription bottle. Since that is all the record shows he did, defendant concludes he did not violate the statute. Referring to the

prescriptions made out to Barrett and LaGrone found in the trunk of his car, he points out as to LaGrone's prescription that there was no evidence it was "false or improper," and as to Barrett's that there was no evidence Barrett obtained the prescription unlawfully. He also claims that whether or not he knew that the pills were in his trunk, it was not a crime to have prescription drugs unless they were obtained fraudulently or by theft. Since there was no showing that defendant so obtained them, he concludes the trial court erred in finding him guilty.

■■■ Defendant's only citation to statutory or case law in this branch of his argument is to sections 312(g), (h) of the Controlled Substances Act, reading in pertinent part as follows (Ill. Rev. Stat. 1975, ch. 56½, pars. 1312(g), (h)):

> "(g) A person to whom or for whose use any controlled substance has been prescribed or dispensed by a practitioner * * * may lawfully possess such substance only in the container in which it was delivered to him by the person dispensing such substance.
>
> (h) The responsibility for the proper prescribing or dispensing of controlled substances is upon the prescriber and the responsibility for the proper filling of a prescription for controlled substance drugs rests with the pharmacist. * * *"

Defendant implies that because there was no showing that the pills found in his possession were not in appropriate prescription bottles pursuant to the foregoing statutory requirement, there was no proof that defendant did not possess them lawfully. This argument is grounded in a fundamental misapprehension of the nature of the crime charged. Under section 402 of the Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1402), the violation of which was the basis of counts II and III, it was unlawful for any person knowingly to possess a controlled substance "[e]xcept as otherwise authorized by this Act." No provision in the Act would allow defendant knowingly to possess a controlled substance which was prescribed for and dispensed to another person to whom he is not related. Subsections 312(g) and 312(h) of the Act, on which defendant relies, are plainly restrictive in purpose and do not impliedly suggest a person may himself lawfully possess a prescription made out for and dispensed to another as long as it is in the proper container. Compare section 102(ss), which defines "ultimate user" (Ill. Rev. Stat. 1975, ch. 56½, par. 1102(ss) as "* * * a person who lawfully possesses a controlled substance for his own use or for the use of a member of his household * * *." Nowhere in the record, however, is there any evidence that Messrs. Barrett and LaGrone or any other people whose prescriptions were found in defendant's car trunk were members of his household, nor does defendant make this assertion on appeal.

■■ ■ The elements of knowledge and possession, unchallenged by defendant on appeal, were also sufficiently proved. Actual physical possession need not be shown to support a conviction under the Act; constructive possession is satisfactory. Knowledge may be proved by acts, declarations or conduct from which it may fairly be inferred that defendant knew of the existence of the drugs at the place where they were found. (*People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370.) Controlled substances found in a defendant's automobile in a place where he could or should have been aware of them provide sufficient evidence of his knowledge and control to sustain a conviction. *People v. Davis* (1965), 33 Ill. 2d 134, 210 N.E.2d 530; *People v. Pagliara* (1977), 47 Ill. App. 3d 708, 715, 365 N.E.2d 72, *cert. denied* (1978), 434 U.S. 1069, 55 L. Ed. 2d 772, 98 S. Ct. 1250.

## II.

■■ Defendant next argues that he was not proved guilty beyond a reasonable doubt of bribery. His position is based upon the fact, testified to by defendant and Officers Duhig, Lanning and Boyte, that shortly before defendant tendered the bribe money to the police he had been asking about having a bond set. According to defendant, his conduct was "subject to [the] interpretation" that he had offered the money in order to make bond. He draws an analogy between the instant case and "a case of circumstantial evidence, where inferences are raised," citing *People v. Meeks* (1978), 59 Ill. App. 3d 521, 526, 375 N.E.2d 1001, for the principle that "[w]here * * * proof of [a defendant's] guilt is circumstantial, the circumstances proved must not only be consistent with [his] guilt but also inconsistent with any reasonable hypothesis of [his] innocence. [Citation.]" Based upon his contention that his conduct in offering the money to the officers was not inconsistent with a reasonable hypothesis of innocence, defendant concludes that the court erred in finding him guilty beyond a reasonable doubt. Under the facts in this case, a hypothesis of innocence would be unreasonable. In his brief defendant interweaves direct and cross-examination testimony of Officer Duhig, apparently in order to suggest that defendant's inquiries as to setting bond occurred at *precisely* the same time as he was offering the money. Duhig's testimony, however, supported by that of Lanning and Boyte, establishes that defendant's acts constituting the bribe occurred after he had inquired about making bond and after he had been told by Duhig that "* * * any narcotics violations is a judge's bond and I [Duhig] wouldn't have any idea what the bond or amount of the bond would be, and it has to be set by a judge." Defendant was told this repeatedly but persisted in offering the money in exchange for his freedom. At no time were defendant's

offers of money, or his gesture of pushing the money towards the policemen, coupled with any reference to a bond.

The recent case of *People v. Lugo* (1976), 39 Ill. App. 3d 472, 349 N.E.2d 697, involved a similar factual situation. There two officers testified that defendant, while being processed at the police station pursuant to a misdemeanor arrest, told them, " 'I'm married. I have a baby. I'll give you $100. You let me go. You keep the gun and give me a chance.' " (39 Ill. App. 3d 472, 473.) He then took the money out of his boot and offered it to the policemen. Under these facts, the court found "that to give effect to the words attributed to the defendant by the police officers' testimony other than bribery would be stretching an interpretation of words beyond credulity." 39 Ill. App. 3d 472, 475.

Notwithstanding the foregoing, the principle that simultaneous possession of more than one type of controlled substance constitutes but a single offense for which there can be only one conviction, although not raised by either party, compels us to conclude that defendant's conviction on one of the counts under section 402(b) must be vacated. (*People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200; *People v. Dunlap* (1978), 59 Ill. App. 3d 615, 622, 375 N.E.2d 989.) Where a person has been convicted of multiple offenses arising out of the same act or conduct, only the judgment and sentence for the more serious of the offenses may stand. (*People v. Williams* (1975), 60 Ill. 2d 1, 13, 322 N.E.2d 819; *People v. Washington* (1975), 29 Ill. App. 3d 536, 331 N.E.2d 169.) Methylphenidate is a Schedule III and diazepam a Schedule IV substance under the Act (Ill. Rev. Stat. 1975, ch. 56½, pars. 1208(c)(2), 1210(b)(7)). Offenses relating to Schedule III substances are treated as the more serious (Ill. Rev. Stat. 1975, ch. 56½, par. 1209(1)). Accordingly, we affirm defendant's conviction under count II, charging possession of methylphenidate, and vacate his conviction under count III, relating to diazepam.

■■ Our disposition of this case would not ordinarily require remand for resentencing, were the sentence imposed by the trial court clearly intended to run concurrently as to each count on which judgment was entered. On the state of this record, however, we cannot determine whether the sentence was concurrently or consecutively imposed, either as to the counts involving section 402(b) of the Act, or the bribery conviction, or both. (See *People v. Snyder* (1979), 459 Ill. 2d 77, 397 N.E.2d 799; *cf. People v. Natoli* (1979), 70 Ill. App. 3d 131, 387 N.E.2d 1096.) We must therefore remand the cause to the trial court for resentencing. *People v. Toomer* (1958), 14 Ill. 2d 385, 387, 152 N.E.2d 845; *People v. Redmond* (1979), 73 Ill. App. 3d 160, 390 N.E.2d 1364.

For the reasons set forth above, the judgment of the circuit court as to

count I, for bribery, and as to count II, for possession of methylphenidate, is affirmed. The judgment as to count III is vacated. The cause is remanded for consideration of sentencing consistent with the views hereinabove expressed.

Affirmed in part; reversed in part; and remanded for resentencing.

STAMOS, P. J., and PERLIN, J., concur.