THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHNNIE L. EILAND, Defendant-Appellant.

Fifth District No. 5—90—0317

Opinion filed July 26, 1991.

HARRISON, J., dissenting.

William D. Stiehl, Jr., of Wimmer, Stiehl & Montalvo, P.C., of Belleville, for appellant.

Scott Mansfield, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Defendant, Johnnie Eiland, appeals from a judgment of conviction of the offenses of unlawful possession of 200 grams or more of a substance containing cocaine with the intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(11)), and unlawful possession of more than 30 grams but not more than 500 grams of a substance containing cannabis with the intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 705(d)), entered upon a jury verdict in the circuit court of St. Clair County. Defendant contends that (1) the trial court erred in denying his motion to suppress evidence; (2) the trial court erred in denying defendant's motion *in limine* to bar the State from introducing evidence of defendant's prior conviction; (3) the evidence was not sufficient to prove defendant guilty beyond a reasonable doubt; and (4) the State's closing argument was prejudicial.

On September 11, 1989, an information was filed charging defendant with the above-stated offenses based upon evidence seized during a warrantless search of his apartment and automobile conducted by defendant's probation officer on June 15, 1989. Defendant filed a motion to suppress evidence, arguing that a search of his apartment by East St. Louis police officers on June 8, 1989, during which illegal drugs were seized, was unlawful and that the probation officer's search on June 15 was both without probable cause and "fruit of the poisonous tree."

At the hearing on defendant's motion to suppress, Scott Dennis, a friend of defendant, testified that he was at defendant's residence on June 8, 1989, as a baby-sitter for defendant's infant son. According to Dennis, two police officers broke open the back door and a third officer entered through the front door. The officers searched defendant's home.

Detective Delbert Marion, East St. Louis police department, testified that he went with two other police officers to defendant's apartment on June 8 in response to a citizen's complaint by Danny Thompkins that a youth believed to be defendant's son had burglarized Thompkins' home and stolen a rifle. Thompkins told the police that defendant took the rifle away, so Detective Marion and the other officers went to defendant's residence in order to recover the weapon. Detective Marion went to the front door of defendant's apartment, and Scott Dennis allowed him to enter. From his location inside the apartment, Detective Marion could see a scale and two bags containing white powder. The officers seized the two bags, which appeared to contain cocaine, the scale, baggies, a 12-gauge shotgun, and a large sum of money.

Robert Hanson, an intensive probation supervision officer with the Twentieth Judicial Circuit, identified People's exhibit No. 1 as a copy of the conditions of intensive probation supervision that had been given to defendant. Hanson, who conducted defendant's intake interview, stated that he had read through the conditions with defendant and that defendant indicated his understanding of those conditions and signed the agreement. Hanson stated that condition 10(d) was defendant's consent to submit to a search of his person, residence, automobile, and other effects upon request by the probation officer, and consent to the use of anything seized as evidence in a court proceeding.

Michael Buettner, supervisor of the intensive probation unit, testified that the intensive probation program differed from regular probation in that it was an intense monitoring of the probationer with very strict rules requiring, among other things, curfews and urinalysis testing. Buettner testified that he had made the decision to search defendant's residence and automobile based upon defendant's urinalysis on March 22 and May 23 showing the presence of controlled substances. In addition, on June 15 defendant's probation officer, Thomas McManemy, provided Buettner with information he had received that day from Captain Terry Delaney, a member of the Illinois State Police, Division of Criminal Investigation. Delaney had learned from a reliable informant that defendant was involved in

drug trafficking. Both Buettner and McManemy testified that although they were aware the East St. Louis police had searched defendant's apartment on June 8, their decision to conduct a search on June 15 was based on defendant's urinalysis results and on the information provided by Captain Delaney, and not on the fact that the police had found cocaine and drug paraphernalia in defendant's residence on June 8.

Buettner further testified that he and four other probation officers participated in the search of defendant's apartment and automobile on June 15, 1989. The probation officers told defendant that they intended to conduct the search pursuant to the conditions of his probation and defendant did not deny them permission to search. The officers escorted five or six other people out of the apartment and discovered in plain view a scale, a spoon, and a plate, all having a white powdery residue on them. Defendant was then placed under arrest, read his *Miranda* rights and searched. One thousand and fifty-one dollars in United States currency was found on defendant's person. The search of the residence also produced various types of ammunition and a dresser drawer containing a white powdery residue. The officers discovered a bag of cocaine and a bag of cannabis in the trunk of defendant's automobile.

Subsequent to the hearing, the trial court entered an order denying defendant's motion to suppress and finding, *inter alia*, as follows:

"1. Defendant was placed on I.P.S. [intensive probation supervision] for a term of 30 months commencing 1-27-89, in case No. 88—CF—436, and defendant is still on said probation.

2. Illinois Revised Statutes Chapter 38, Sec. 1005—6—3(b) grants the Court authority to impose 'other reasonable conditions "[of probation]" [*sic*] relating to the nature of the offense or the rehabilitation of the defendant...[.]'

3. Pursuant to the authority granted under Chapter 38, Sec. 1005—6—3(b), specific [*sic*] Rule 10(d) of the conditions of probation provides as follows:

'Submit to searches of your person, residence, papers, automobile and/or effects at any time such requests are made by the probation officer, and consent to the use of anything seized as evidence in a court proceeding.'

4. A warrantless search with less than probable cause may be reasonable under the Fourth Amendment if it is conducted pursuant to a regulation that is a reasonable response to the special needs of the operation of the probation system. *Griffin*

*v. Wisconsin* [1987], 483 U.S. 868, 97 L. Ed. 2d 709[, 107 S. Ct. 3164]. It is sufficient to uphold the reasonableness of the search 'if the information provided indicates...only the likelihood [***] of facts justifying the search.' See 483 U.S. 868 at 880.

\* \* \*

Based upon the foregoing, this Court finds that, without considering the results of the search on June 8, 1989, information provided indicated the likelihood of facts justifying the search of the defendant who was subject to searches pursuant to the condition of I.P.S., the probation which defendant and his counsel actively sought and requested this Court to impose at the time of his sentencing in case No. 88—CF—436."

■■ We believe the trial court correctly denied defendant's motion to suppress. A trial court's ruling on a motion to suppress will not be overturned on appeal unless it is clearly erroneous. (*People v. Guerrieri* (1990), 194 Ill. App. 3d 497, 503, 551 N.E.2d 767, 771; *People v. Clark* (1982), 92 Ill. 2d 96, 99, 440 N.E.2d 869, 871.) Here, it is clear that neither the trial court's findings of fact nor its application of the law as stated in *Griffin v. Wisconsin* (1987), 483 U.S. 868, 97 L. Ed. 2d 709, 107 S. Ct. 3164, to those facts was in error.

In *Griffin*, the United States Supreme Court held that a warrantless search of a probationer's residence was "reasonable" within the meaning of the fourth amendment because it was conducted pursuant to a regulation that was itself a reasonable response to the "special needs" of a probation system. The Court observed that a State's operation of a probation system, like its operation of a school, government office, or prison, or its supervision of a regulated industry, presented "special needs" beyond normal law enforcement that may justify departures from the usual warrant and probable cause requirements. (483 U.S. at 873-74, 97 L. Ed. 2d at 717, 107 S. Ct. at 3168.) Restrictions on a probationer, the Court further stated, are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's conditional liberty status. These goals require and justify the exercise of supervision to assure that the restrictions are in fact observed. "Supervision, then, is a 'special need' of the State permitting a degree of infringement upon privacy that would not be constitutional if applied to the public at large." (483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3168.) This special need is equally applicable to the State of Illinois and its probation system.

■ The *Griffin* Court reasoned that in conjunction with the need for supervision, a degree of flexibility must also be accorded the probation officer. A warrant requirement would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires. Additionally, the delay inherent in obtaining a warrant would make it more difficult for probation officials to respond quickly to evidence of misconduct and would reduce the deterrent effect that the possibility of expeditious searches would otherwise create. 483 U.S. at 876, 97 L. Ed. 2d at 719, 107 S. Ct. at 3170.

The probation agency must be able to proceed on the basis of its entire experience with the probationer and, especially in cases involving drugs or illegal weapons, probation officers must be able to act based on a lesser degree of certainty than the fourth amendment would otherwise require in order to intervene before a probationer does damage to himself or society. (*Griffin*, 483 U.S. at 879, 97 L. Ed. 2d at 721, 107 S. Ct. at 3171.) Thus, the Court believed the search decision should be left to the expertise of probation authorities rather than a magistrate, and should be supportable by a lesser quantum of concrete evidence justifying suspicion than would be required to establish probable cause. (483 U.S. at 879 n.6, 97 L. Ed. 2d at 721 n.6, 107 S. Ct. at 3171 n.6.) The Court in *Griffin* therefore concluded that it was reasonable to permit information provided by a police officer, whether or not that information was based on firsthand knowledge, to support a probationer's search. "[W]e think it enough if the information provided indicates *** only the likelihood *** of facts justifying the search." 483 U.S. at 879-80, 97 L. Ed. 2d at 721-22, 107 S. Ct. at 3171-72.

In the instant case, section 5—6—3(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—3(b)) authorized the trial court to impose reasonable conditions of probation relating to the nature of the offense and the rehabilitation of the defendant. Pursuant to this section, a condition of defendant's intensive probation was that he submit to searches of his "person, residence, papers, automobile and/or effects" at any time the probation officer requested and that he consent to the use of anything seized as evidence in a court proceeding. Based upon the Court's reasoning in *Griffin*, we find this condition to be a reasonable response to the "special needs" of Illinois' probation system. Thus, a search pursuant to said condition would be a justified departure from the usual warrant and probable cause requirements.

■ Additionally, a search conducted pursuant to a valid consent does not violate the fourth amendment. (*Washington v. Chrisman* (1982), 455 U.S. 1, 9-10, 70 L. Ed. 2d 778, 787, 102 S. Ct. 812, 818; see also *People v. Kelley* (1979), 76 Ill. App. 3d 80, 86, 394 N.E.2d 739, 744.) While defendant acknowledges that he signed a form consenting to warrantless searches in order to obtain probation, defendant argues that under such "coercive" circumstances, his consent was not voluntary. However, a probationer's waiver of his fourth amendment rights is no less voluntary than the waiver of rights by a defendant who pleads guilty to gain the benefits of a plea bargain. See *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 360-64, 54 L. Ed. 2d 604, 609-11, 98 S. Ct. 663, 666-68; *People v. Bravo* (1987), 43 Cal. 3d 600, 738 P.2d 336, 238 Cal. Rptr. 282, *cert. denied* (1988), 485 U.S. 904, 99 L. Ed. 2d 234, 108 S. Ct. 1074.

In *Bravo*, the California Supreme Court examined whether a warrantless search was within the scope of a probationer's consent to search pursuant to a probation condition worded similarly to the condition in question here. The California court reasoned that a probationer consents to the waiver of his fourth amendment rights in exchange for the opportunity to avoid serving a State prison term. "Probation is not a right, but a privilege." (*Bravo*, 43 Cal. 3d at 608, 738 P.2d at 341, 238 Cal. Rptr. at 287; see also *People v. Henderson* (1971), 2 Ill. App. 3d 401, 405, 276 N.E.2d 372, 375.) If defendant had refused to agree to abide by the conditions of probation, the court would have had a basis to deny probation on the ground that the defendant was unwilling to accept and abide by its proposed terms. *People v. Kelley* (1985), 129 Ill. App. 3d 920, 923, 473 N.E.2d 572, 574.

■ We therefore see no reason for denying a defendant the right to waive his fourth amendment rights in order to accept the benefits of probation. However, unlike the California court, which held that a search condition of probation that permits a search without a warrant also permits a search without reasonable cause (*Bravo*, 43 Cal. 3d at 611, 738 P.2d at 342-43, 238 Cal. Rptr. at 289), we believe a probationer's waiver of fourth amendment rights extends only to searches conducted upon a reasonableness standard, as any probation condition imposed must be "reasonable" under the language of section 5—6—3(b). Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—3(b).

In the instant case, defendant had agreed to allow a search pursuant to what we have determined to be a reasonable condition of his intensive probation. As in *Griffin*, the probation officers had information from a police officer, Captain Terry Delaney, that defendant

was committing a criminal offense and were entitled to rely upon that information. (*Griffin*, 483 U.S. at 879-80, 97 L. Ed. 2d at 721, 107 S. Ct. at 3171-72.) Additionally, the probation officers knew that two of defendant's urinalysis tests were positive for cocaine and cannabis. The search itself was therefore reasonable in that the information the probation officers possessed indicated the likelihood of facts justifying the search. Thus, given defendant's consent and the additional facts known to the probation officers, the justification for the instant search was even greater than in *Griffin*.

■ Despite defendant's authorization of the probation officers' search on June 15, 1989, and its reasonableness under *Griffin*, defendant contends that the evidence should have been suppressed because its seizure resulted from an illegal search by police officers on June 8, 1989, and therefore constituted "fruit of the poisonous tree." (*Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.) However, the probation officers gave two independent reasons for their decision to search and testified that the June 8 search did not influence them. The trial court heard this testimony, and the credibility of the witnesses was strictly within its purview. (*Guerrieri*, 194 Ill. App. 3d at 503, 551 N.E.2d at 771.) The trial court therefore correctly denied defendant's motion to suppress the evidence, where it found the reasons for searching defendant and his property on June 15 were sufficiently distinguishable from the police officers' search on June 8 to be purged of any taint from it. See *Wong Son*, 371 U.S. at 487-88, 9 L. Ed. 2d at 455, 83 S. Ct. at 417.

■ Defendant's second contention of error concerns the trial court's denial of his motion *in limine* to bar the State from using his 1988 conviction for possession of cocaine for impeachment purposes. Defendant argues that, based on the trial court's ruling, he decided not to testify because he believed that the State's use of the 1988 conviction to impeach him would have been too prejudicial. However, in *Luce v. United States* (1984), 469 U.S. 38, 43, 83 L. Ed. 2d 443, 448, 105 S. Ct. 460, 464, the United States Supreme Court held that a defendant must testify at trial in order to raise and preserve for review his claim that it would be improper for the prosecution to impeach his testimony with evidence of a prior conviction. (Accord *People v. Rush-Bey* (1987), 152 Ill. App. 3d 17, 22, 503 N.E.2d 1193, 1195-96.) Therefore, where defendant has failed to properly preserve this issue, he is precluded from raising it on appeal.

■ ■ The third issue we address is whether defendant was proved guilty beyond a reasonable doubt. To obtain a conviction for

the unlawful possession of a controlled substance, the State must prove that the defendant had knowledge of the presence of the drugs and that the drugs were in his immediate possession and control. (*People v. Gallagher* (1990), 193 Ill. App. 3d 566, 569, 550 N.E.2d 255, 256; *People v. Evans* (1986), 143 Ill. App. 3d 236, 238, 492 N.E.2d 1036, 1038.) Possession may be established by evidence of actual physical possession or constructive possession. Constructive possession exists where there is no actual personal present dominion over the narcotics, but there is an intent and a capacity to maintain control and dominion over them. *Gallagher*, 193 Ill. App. 3d at 569, 550 N.E.2d at 256-57.

Where possession is proved, the element of knowledge may be inferred from the surrounding facts and circumstances, and both knowledge and possession may be proved by circumstantial evidence. (*Evans*, 143 Ill. App. 3d at 239, 492 N.E.2d at 1038.) It is no defense that another had knowledge of the drugs and control of them, as defendant's possession may be joint with that of another. (*People v. Birge* (1985), 137 Ill. App. 3d 781, 790, 485 N.E.2d 37, 44.) Finally, whether the defendant had knowledge and possession are questions of fact to be resolved by the jury, and its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt as to guilt. *People v. Scott* (1987), 152 Ill. App. 3d 868, 871, 505 N.E.2d 42, 45.

Review of the evidence in this case fails to uncover such weakness that it can be held that defendant was not proved guilty. Defendant admits that traces of cocaine and drug paraphernalia were found in his residence, a large sum of money was found on his person, and quantities of cocaine and marijuana were found in the trunk of his automobile. Defendant argues, however, that his apartment was rented by Lee Jacobs, and that in addition to Jacobs and defendant, several other people lived on the premises. Defendant also points to evidence that the trunk lock of his automobile was broken, thus allowing access by "any number of people," and to evidence that defendant owned and operated a landscaping service which did business largely in cash, thus explaining the $1,051 in his possession at the time of the search. However, in reviewing the sufficiency of the proof, the appellate court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found proof beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.

■■ ■ Controlled substances discovered on premises, or in a vehicle, under the defendant's control and in a place where he could have been, or should have been, aware of them give rise to an inference of knowledge and possession by defendant which may be sufficient to sustain a conviction for unlawful possession of controlled substances. (*Scott*, 152 Ill. App. 3d at 871, 505 N.E.2d at 45; *People v. Evans* (1979), 80 Ill. App. 3d 87, 92, 398 N.E.2d 1219, 1223.) Mere access by other persons to the area where drugs are found is insufficient to defeat a charge of constructive possession; if two or more people share immediate and exclusive control or share the intention and power to exercise control, then each has possession. (*Scott*, 152 Ill. App. 3d at 871, 505 N.E.2d at 45.) Therefore, the fact that Lee Jacobs or others may have had access to defendant's apartment and the trunk of his car would not defeat the conclusion that defendant had constructive possession.

■■ In addition, although one of defendant's witnesses testified that he saw Jacobs with a scale and a bag containing white powder on the day of the search, the witness admitted that he did not tell the police about what he had seen, and his credibility was for the jury to decide. Furthermore, even if the jury chose to believe the witness' testimony, this fact would not preclude a finding that defendant was in joint possession of the drugs with Jacobs. Based upon the evidence presented, we believe the jury could reasonably find that defendant had knowledge and possession of the drugs found herein. As for proof of defendant's intent to deliver, the quantity of drugs along with the ammunition and drug paraphernalia found in the search entitled the jury to conclude that the drugs were possessed with an intent to deliver. See *People v. Romero* (1989), 189 Ill. App. 3d 749, 756, 546 N.E.2d 7, 11.

Defendant's final contention of error is that the prosecutor, in his closing argument, improperly commented upon defendant's failure to produce a witness and improperly implied that defense counsel should have called as a witness someone counsel knew would refuse to testify. At trial, defendant presented evidence that Lee Jacobs, who shared defendant's apartment, was seen at the residence on the day of the search in possession of a scale and a white powdery substance and that Jacobs may have used defendant's automobile that day. In his closing argument, defense counsel argued that the controlled substances defendant was charged with possessing had probably belonged to Lee Jacobs. In his rebuttal argument, the prosecutor stated: "Why wasn't Lee Jacobs called up here, subpoenaed and asked was this your stuff? He could have plead [*sic*] the Fifth, said,

no, I'm not going to answer that. They have that power." Defendant's objection to the argument was overruled, but the trial court directed the prosecutor to move on to a different point.

As a general rule, it is improper for the State to comment on a defendant's failure to present a witness when that witness is equally accessible to both parties; however, when a defendant injects a witness' name into his defense and locating that witness is within a defendant's control or knowledge, comments on the failure to produce the witness are not improper. (*People v. Doe* (1988), 175 Ill. App. 3d 371, 377, 529 N.E.2d 980, 985; *People v. Adams* (1985), 109 Ill. 2d 102, 120-21, 485 N.E.2d 339, 345, *cert. denied* (1986), 475 U.S. 1088, 89 L. Ed. 2d 730, 106 S. Ct. 1476.) It is a reasonable and fair inference that people who are living with a defendant at the time of the offense are more accessible to the defendant than to the State. (*Doe*, 175 Ill. App. 3d at 378, 529 N.E.2d at 985; *People v. Bianchi* (1981), 96 Ill. App. 3d 113, 116, 420 N.E.2d 1187, 1190.) In the instant case, defendant and Lee Jacobs were living in the same apartment at the time of the offenses, and it was defendant's evidence that injected Jacobs' name into the trial. Therefore, it was not improper for the prosecutor to comment upon defendant's failure to produce Jacobs as a witness.

However, it was improper for the prosecutor to suggest that defense counsel should have called a witness whom he knew would refuse to answer questions. It has been often held that it is improper for a party to call a witness if the party has reason to believe the witness will invoke his fifth amendment privilege against self-incrimination before the jury. (*People v. Nally* (1985), 134 Ill. App. 3d 865, 869-70, 480 N.E.2d 1373, 1377; *People v. Myers* (1966), 35 Ill. 2d 311, 334, 220 N.E.2d 297, 311, *cert. denied* (1967), 385 U.S. 1019, 17 L. Ed. 2d 557, 87 S. Ct. 752.) Here, therefore, the prosecutor's comments misled the jury as to the ability of defense counsel to call Lee Jacobs and have him assert his fifth amendment privilege.

Improper comments or arguments will be deemed sufficiently prejudicial so as to result in reversible error when the remarks constitute a material factor in the defendant's conviction or result in substantial prejudice. (*People v. Witted* (1979), 79 Ill. App. 3d 156, 165, 398 N.E.2d 68, 76.) In determining whether the prosecutor's comments constituted prejudicial error, the test employed is whether the jury would have reached a contrary verdict had the improper remarks not been made and, in so determining, reference must be made to the content of the language used, its relation to the

evidence, and the effect of the argument on the rights of the accused to a fair and impartial trial. *Witted,* 79 Ill. App. 3d at 165, 398 N.E.2d at 76.

 ■ It is well established that an accused is guaranteed a fair trial, not one totally free from error; accordingly, where the evidence adduced is so overwhelming that a conviction would, of necessity, result even if the error were eliminated, a court on review will not reverse the trial court's judgment. (*People v. Bianchi* (1981), 96 Ill. App. 3d 113, 117, 420 N.E.2d 1187, 1191.) In the instant case the cocaine and cannabis with which defendant was charged with possessing with intent to deliver were discovered in the trunk of defendant's automobile, and a search of defendant's person uncovered more than $1,000 in cash. Moreover, drug paraphernalia, a weapon, ammunition, and a large sum of money were seized from defendant's apartment. We have previously noted the impeachment of defendant's witness who raised the issue that the drugs could have belonged to Lee Jacobs instead of defendant. Given the evidence of defendant's guilt adduced at trial and lack of credible evidence supporting the defense expounded at trial, reasonable grounds do not exist for believing that the remark prejudiced the jury's deliberations and affected its verdict, and therefore the error should be deemed harmless.

Accordingly, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

LEWIS, J., concurs.

JUSTICE HARRISON, dissenting:

I believe the prosecutor's comments regarding defendant's ability to call Lee Jacobs and have him assert his fifth amendment right against self-incrimination constituted reversible error. I disagree with the majority's conclusion that the evidence adduced in the instant case was "so overwhelming" that a conviction would have resulted even had the fallacious statements not been made. Given the evidence that Jacobs might actually have been the person to whom the controlled substances belonged, the erroneous inference that defendant could have called Jacobs to assert the privilege and thus bolster defendant's innocence by refusing to incriminate himself created substantial prejudice. Defendant was entitled to have his guilt or innocence determined by the jury without prejudicial comment or argu-

264

ment. *People v. Popely* (1976), 36 Ill. App. 3d 828, 836, 345 N.E.2d 125, 131.

Further, to view these remarks as harmless error is to sanction the prosecution's boldfaced misstatement of the law. This I refuse to do, especially where no curative instruction was given the jury to clarify the misperceptions caused by these comments. Although the jury was instructed on the purposes of argument, if error of this nature were deemed so easily cured, the prosecution could improperly advise the jury and argue harmless error in any case. (See *People v. Eddington* (1984), 129 Ill. App. 3d 745, 776-77, 473 N.E.2d 103, 125.) For these reasons, I respectfully dissent.