THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LaMOR-
RIS DENTON, Defendant-Appellant.

First District (3rd Division)   No. 1—91—0135

Opinion filed June 15, 1994.—Rehearing denied August 10, 1994.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Faustmann, and Elizabeth Scholz, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

After a jury trial, defendant LaMorris Denton was convicted of possession of a controlled substance with intent to deliver in violation of section 401(c)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 1401(c)(2) (now 720 ILCS 570/401(c)(2) (West 1992))) and sentenced to serve a term of 15 years' imprisonment. It is from the judgment of conviction that defendant now appeals to this court pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603).

On appeal, defendant argues that: (1) the State failed to prove him guilty of possession of a controlled substance with intent to deliver in light of the voluntary admission of another person that the drugs were his and not defendant's; (2) he was denied a fair trial when the prosecution misled the jury; and (3) the trial court abused its discretion in sentencing him.

For the reasons which follow, we affirm.

These are the facts. On June 28, 1990, about a dozen Chicago police officers executed a search warrant for the premises at 8139 Paxton Avenue. Among the items seized were three plastic bags containing white powder. The contents of one of the bags were found to be 5.4 grams of cocaine. Although not present at the time of the search, both defendant and his wife, codefendant Pamela Denton (Pamela), were arrested and subsequently charged with possession of a controlled substance with intent to deliver.

At trial, Officer David Snethen of the Chicago police department testified that he was in charge of the search. Snethen testified that he and the other assigned officers went to the two-story house at 8139 South Paxton Avenue to serve a narcotics search warrant naming defendant on June 28, 1990. Snethen recounted that the officers knocked on the doors and were admitted by a 14-year-old resident, Eric Buckley. Each officer had been assigned a specific area to search in the house with the understanding that any evidence found was to be removed by Snethen.

Snethen initially went to the basement but was then called to a bedroom located in the middle of the first floor by Officer John McMurray, who had discovered a loaded revolver under a bed mattress. Proof of defendant's residency, three plastics bags of white powder,

six boxes of various types of handgun ammunition and $1,800 in an open safe were also found in the room. Snethen stated that the room's closet contained male and female clothing.

Approximately 10 feet from the middle first floor bedroom was the kitchen in which miscellaneous drug paraphernalia was found, *viz.*, grinders, scales, gram weights, measuring spoons, wire strainers, razors blades and glass vials containing white powder residue. Additionally, police recovered other items used in processing narcotics for sale on the street, which were covered with white powder residue, and small bags used to package narcotics for that purpose. All of these items were taken and inventoried.

Later, defendant arrived at the station, was informed of his *Miranda* rights, and after the drug charges were explained he said that "It wasn't nothing."

On cross-examination, Snethen testified that while the police inventory slip for the recovered items listed the address of recovery, it did not state the specific locale in the house where they were found. Snethen further testified that the search of the first and second floors was delegated to some officers and that different officers were responsible for the other bedrooms in the house. It was Snethen's responsibility to recover, itemize and inventory the recovered property. An inaccurate diagram of the residence, which had not been seen by Snethen until trial, had been prepared by supervising sergeant Larry Hargrove. The arrest report for Pamela incorrectly stated that white powder had been retrieved from the front upstairs bedroom. Snethen testified that he had no idea who had prepared that arrest report, which bore his incorrectly spelled name. The officers involved in the search had been authorized to sign Snethen's name to any report prepared pursuant thereto, and the reports contained only a summary of events.

Officer John McMurray testified that after entering the house, he began to secure it. McMurray found no one in the front bedroom. McMurray then forced open the padlocked door of the middle first-floor bedroom and found it also empty. After the house was secured McMurray recounted that he searched the middle first-floor bedroom, found a revolver under a mattress and then summoned Snethen.

During cross-examination, McMurray stated that he had drafted the inventory slip for the recovered paraphernalia which, without stating its exact location, indicated that the paraphernalia was contained in gym bags found in the residence. McMurray recollected that he had stayed in the middle first-floor bedroom for about one to two minutes and had not seen the white powder until someone else had noticed it. After the revolver was found, Snethen and another

officer finished the search of the room. Subsequently, defendant and Pamela returned to the house and were arrested.

At trial, the parties stipulated that the chain of custody for the seized white powder was proper and that the results of the chemical analysis thereof properly revealed that one of the bags contained 5.4 grams of cocaine.

Testifying as a defense witness, Eric Buckley recounted that he had been living with defendant since June 1990. The house consisted of three stories, including the basement, and defendant's bedroom was located on the second floor. Buckley stated that the rooms on the first floor were comprised of a spare room and bedrooms belonging to his uncle, Albert Johnson, and defendant's daughter Kelly. Johnson is defendant's stepfather.

Buckley was alone when the police came to execute the search warrant. Buckley stated that the officers detained him during the course of their search and that during this time he saw an officer come out of Johnson's room carrying mail and three athletic bags which the officer placed on the dining room table, opened and searched. Another officer came from upstairs carrying a zipper pouch which Buckley had never seen before, a gun and two letters which he placed on the table. While unable to see the writing on the letters brought from the second floor, he was able to see that the letters initially brought to the table showed Johnson's name.

Johnson testified that at the time of the police raid he had lived with defendant in the house for 11 months and stayed in the middle first-floor bedroom. Johnson stated that when he moved in, he found a black bowling bag full of ammunition in the basement and moved it to his closet in the event that its owner would claim it. Although admitting that he kept a small amount of cocaine under his mattress for personal use, Johnson asserted that there was no gun under the mattress and that he did not know of there being any firearm in the house. Johnson further testified that the paraphernalia recovered by the police was used by him to "rerock" cocaine for personal use or used for cleaning purposes.

Johnson recollected that, on the day of the raid, defendant had been taken into custody and subsequently remained in jail for about one month. During this time, Johnson never had occasion to tell the police that they had made a mistake. The first time Johnson asserted that the cocaine and attendant paraphernalia belonged to him and not defendant was at trial. Similarly, Johnson never informed the police or his landlord about the ammunition he had discovered in the basement.

James McAfee testified on behalf of defendant that when he and

defendant arrived at the house, the officers drew their pistols and ordered the two men out of defendant's vehicle. McAfee and defendant were subsequently taken to the police station, where McAfee saw a police officer remove an insurance card and a piece of paper displaying defendant's name from Pamela's purse. McAfee further testified that as of the date of trial he had known defendant for about five months and that he had never seen him use cocaine.

Pamela testified that she and defendant shared one of the three bedrooms located on the second floor. She stated that the $1,800 was obtained by pawning jewelry and that the money was not kept in a bank because the couple feared garnishment. Pamela explained that the money was to be used to repair Johnson's car, which had been damaged by a friend of defendant's.

According to Pamela, about one hour before the police arrived, she returned to the house after running some errands and placed a revolver under her mattress. Pamela stated that the revolver had been given to her by her brother, who had asked her to hold it until he sold it to a friend. Subsequently, she left the house to run another errand and returned to find the officers conducting the search. The police took Pamela into custody and drove her to the station separately from defendant and McAfee, both of whom she saw there. While in police custody, Pamela saw a police officer remove an insurance card and a check from her purse. Pamela also stated that with the exception of the pistol, she had never before seen any of the recovered items.

The jury found both defendant and Pamela guilty of possession of a controlled substance with intent to deliver.

Defendant, who had previously been convicted of aggravated battery, armed robbery and unlawful use of a weapon by a felon, was sentenced to 15 years' imprisonment. Pamela, who had no prior criminal record, was sentenced to four years' imprisonment. Both defendants' sentences were to be followed by a mandatory supervised release period of two years.

The instant appeal followed.

I

■ We first examine defendant's contention that the State failed to prove him guilty beyond a reasonable doubt of the offense charged in light of Johnson's voluntary admission that the drugs were his and not defendant's. When reviewing a challenge to the sufficiency of evidence in a criminal trial, the relevant inquiry for a reviewing court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the

essential elements of the offense beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453; *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) A court of review applies this standard regardless of whether the evidence is direct or circumstantial. (*People v. Pintos* (1989), 133 Ill. 2d 286, 549 N.E.2d 344.) Where the evidence produced by the prosecution is circumstantial in nature, the State is under no obligation to exclude every reasonable hypothesis of innocence. (*People v. Eyler* (1989), 133 Ill. 2d 173, 549 N.E.2d 268.) The appellate court is not permitted to substitute its judgment for that of the trier of fact on questions involving the weight to be assigned evidence or the credibility of witnesses. (*People v. Campbell* (1992), 146 Ill. 2d 363, 586 N.E.2d 1261.) Accordingly, this court will not disturb a judgment of conviction unless the evidence presented at trial is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Medeiros* (1993), 249 Ill. App. 3d 139, 618 N.E.2d 1065.

■ To obtain a conviction for the possession of a controlled substance, the State must establish knowledge on the part of the defendant of the presence of the drugs and that such drugs were in defendant's immediate possession. (*People v. Eiland* (1991), 217 Ill. App. 3d 250, 570 N.E.2d 1185.) As possession may be constructive, actual physical possession by the defendant is not required. (*People v. Romero* (1989), 189 Ill. App. 3d 749, 546 N.E.2d 7.) Constructive possession is found where there is no actual personal present dominion over the controlled substance, but there is an intent and a capacity to maintain control and dominion over it. (*Eiland*, 217 Ill. App. 3d 250, 570 N.E.2d 1185.) Mere access by other individuals is insufficient to defeat a charge of constructive possession. *People v. Mack* (1957), 12 Ill. 2d 151, 145 N.E.2d 609; *People v. Scott* (1987), 152 Ill. App. 3d 868, 505 N.E.2d 42.

Once possession is proved, the element of knowledge may be inferred from the surrounding facts and circumstances, and both possession and knowledge may be proved by circumstantial evidence. (*Eiland*, 217 Ill. App. 3d at 260.) If it is proved that the defendant controls the premises upon which the drug was found, an inference of both knowledge and possession by defendant arises which may sustain a guilty verdict. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361.) When two or more people share immediate and exclusive control or share the intention and power to exercise control, the result is not vindication of the defendant, but rather a situation of joint possession. (*Eiland*, 217 Ill. App. 3d 250, 570 N.E.2d 1185; *People v. Williams* (1981), 98 Ill. App. 3d 844, 424 N.E.2d 1234.) Whether the defendant had knowledge and possession are questions of fact within the province of the jury. *Scott*, 152 Ill. App. 3d 868, 505 N.E.2d 42.

■ Based upon the evidence presented at trial and a thorough review of the record on appeal, we cannot conclude that defendant was not proved guilty beyond a reasonable doubt. It is clear that a large quantity of cocaine, a safe containing $1,800 in cash, a revolver, a cache of ammunition and proof of defendant's residency were all found in defendant's bedroom. Additionally, only 10 feet away in the kitchen, equipment obviously used in the preparation of cocaine for delivery was discovered by the police. All of this evidence not only demonstrates possession of the drugs but also clearly evinces an intent to deliver them. The fact Johnson claimed responsibility for the drugs did not convince the jury that his stepson was not guilty nor does it persuade us. Our understanding of basic human conduct suggests that drugs are rarely, if ever, found in the residence of an innocent person. Accordingly, we believe that the ample evidence in the case *sub judice* was more than sufficient to support the jury's verdict.

## II

■ Next, we turn to defendant's argument that he was denied a fair trial when the prosecution made allegedly improper comments to the jury. The State urges that this issue is waived. We agree. It is well established that, absent plain error, both an objection at trial and a proper post-trial motion are necessary to preserve an issue for appeal. (*Medeiros*, 249 Ill. App. 3d at 140.) As we perceive no plain error and defendant failed to make the requisite objections at trial or to include claimed errors in his post-trial motion, we find this issue waived.

## III

Still to be considered is defendant's assertion that the trial court abused its discretion in sentencing him. Specifically, defendant urges that his 15-year sentence was excessive in light of fact that codefendant Pamela received four years' imprisonment. We find this contention wholly without merit.

■ It is settled law in Illinois that a trial court's judgment as to the appropriate punishment is entitled to great deference. Absent a showing that the punishment imposed constituted an abuse of discretion, a sentence will not be disturbed by a reviewing court. (*People v. Illgen* (1991), 145 Ill. 2d 353, 583 N.E.2d 515.) The fact that one defendant received a harsher sentence than a codefendant does not *per se* establish an impermissibly disparate sentence. (*People v. Watkins* (1990), 206 Ill. App. 3d 228, 563 N.E.2d 155.) "Sentence disparity occurs when equally culpable defendants who have like

backgrounds are given substantially different sentences or when equally culpable defendants with different backgrounds, ages, and criminal propensities are given the same sentence. [Citation.] A disparity between codefendants' sentences is justified and will not be disturbed if the disparity is warranted by differences in the nature and extent of each defendant's participation in the offenses or by the history and character of the defendants." *People v. Smith* (1991), 214 Ill. App. 3d 327, 342, 574 N.E.2d 784.

In the instant case there is clearly a difference in the criminal histories of defendant and Pamela. At the time of her sentencing, Pamela had no criminal record whatsoever. However, the defendant was a convicted felon with a extensive history of violent crimes. Thus, the disparity in sentences is in no way arbitrary or unjustified.

For the reasons expressed above, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI and CERDA, JJ., concur.